JENKINS ET AL. *v.* KING.

[No. 28,174. Filed February 26, 1946. Rehearing denied April 1, 1946.]

*Denver C. Harlan* and *Clarence M. Brown,* both of Richmond, for appellants.

*Kane, Blain & Hollowell,* of Indianapolis, and *Gardner, Jessup, Harrington & Haworth,* of Richmond, for appellee.

GILKISON, J.—Appellants brought this action to enjoin appellee from violating an alleged negative covenant contained in a written contract between appellants and appellee. Appellee's general demurrer to the complaint was sustained by the court below, appellants refused to plead further and judgment was rendered for appellee, from which appellants appeal, assigning as error the sustaining of the demurrer.

In determining the correctness or lack of correctness of the court's ruling on the demurrer we are governed by the rule that, for the purposes of the demurrer, all facts well pleaded are taken as true. The substance of the averments in appellants' complaint is that at the time of the execution of the contract appellants had and owned an established general insurance agency in the city of Richmond, Wayne County, Indiana, where they solicited and wrote all kinds of insurance, and kept a complete list of policy holders, monthly expirations, and names and addresses of insurance prospects.

That they entered into a written contract of employment with appellee on November 22, 1939, for a period of two years commencing January 1, 1940, "a copy of which contract is filed herewith, made a part hereof, and marked Exhibit A; that pursuant to said contract and under the terms and conditions thereof said defendant did so enter the employ of the plaintiffs and remained therein continuously until the first day of December, 1943 without change or modification of said contract or the conditions of his employment or compensation as provided in said contract." The duties of appellee are then averred.

It is then averred that appellee left appellants' employ on December 1, 1943, and immediately entered in the general insurance business in Richmond, Wayne County, Indiana, and has continuously since engaged in such business. That thereby he violated and continues to violate the negative covenant contained in the written contract, to the irreparable injury of the appellants.

The written contract (Exhibit "A") made a part of the complaint, as the foundation of the action, omitting signatures is as follows:

"This Agreement made by and between Atwood L. Jenkins and Alfred Will Jenkins, doing business as Jenkins Bros. in the City of Richmond, Indiana, hereinafter referred to as First Parties, and Lowell .M. King of Indianapolis, Indiana, hereinafter referred to as Second Party:—

"WITNESSETH: That said Second Party hereby agrees to associate himself with said First Parties exclusively for a period of two years, commencing January 1, 1940. Said First Parties own and are engaged in the business of operating a general insurance agency in said City of Richmond, and in such business and the office thereof, said Second Party shall perform such duties in connection with selling insurance, adjusting claims, delivering policies, collecting premiums, and like serv-

ices as shall be done to the best interest of said First Parties.

"Said Second Party agrees to give all his working time to the duties hereunder, and to conform to the rules, regulations and practices of said First Parties, and during his association, or thereafter, he shall not disclose to others any fact concerning the business of said First Parties.

"As a part of the consideration of his employment the said Second Party agrees that in case he should leave the services of said First Parties, he will not, for a period of five years thereafter, engage directly or indirectly on his own account, or in connection with others, in the business of soliciting or writing insurance of any kind in Wayne County, Indiana.

"As remuneration for the services of said Second Party as above set out, said First Parties agree to pay to said Second Party the sum of Two Thousand Five Hundred Dollars ($2500.00) per annum, payable in twelve equal monthly payments during the two year period of this agreement, at the end of which period a new agreement shall be made by the parties hereto.

"It is further understood and agreed that should either or both of the parties, constituting the First Parties of this contract, desire to dispose of their interests in the said Jenkins Bros. Agency, either in whole or in part, the party of the Second Part shall have the first option to purchase at lease one-half of that portion of the agency that is being offered for sale.

"It being understood, however, that the above does not apply to the entry into the business, of either or both, of the sons of the First Parties hereto.

"It is further understood and agreed that this contract may be modified at any time upon the mutual agreement of all parties hereto.

"Witness our hands this 22nd day of November, 1939."

A contract of employment containing a negative covenant that is in restraint of trade is not favored in

law, but may be enforced in equity for the purpose of protecting the employer's trade secrets.

An employer may bind an employee lawfully, by contract, not to divulge knowledge secured from his employment under the contract to a competitor, or to use such knowledge in a business of his own in competition with his employer, for a reasonable time after the termination of the employment contract. 36 Am. Jur. *Monopolies, Combinations, Etc.* § 78, p. 554. *Grand Union Tea Company* v. *Walker* (1935), 208 Ind. 245, 195 N. E. 277. *Harrison* v. *Glucose Sugar Refining Company* (1902), 116 F. 304; 58 L. R. A. 915; *Clark Paper & Mfg. Co.* v. *Stenacher* (1919), 108 Misc. 399, 177 N. Y. Supp. 614, affirmed 193 App. Div. 924, 184 N. Y. Supp. 914; Anno. 20 A. L. R. 864. *Sherman* v. *Pfefferkorn* (1922), 241 Mass. 468, 135 N. E. 568.

The serious question presented in this case is whether or not the contract involved, by its terms, binds the appellee not to engage in a competing business in Wayne County, Indiana, for a period of five years after the termination of the contract; or for a period of five years only if he should leave the services of appellants during the two year term provided by the contract.

It is fundamental that one who executes a contract of a certain character is bound by its terms, even though he meant something different and thought the words conveyed his meaning. A court must give effect to the meaning and intention of the parties as expressed in the language of their contract, in the absence of anything to show legal impediment to prevent their entering into any contract they see fit or their expressing it in the language of their own choice. Where there is no right to the reformation of a written contract, the rights of the parties must be determined according to the writing.

In the absence of an ambiguity it is not within the function of the judiciary to look outside of the instrument to get at the intention of the parties. Their ██ sole duty is to find out what was meant by the language of the instrument. In other words, the object to be attained in interpreting a contract is to ascertain the meaning and intent of the parties as expressed in the language used. 12 Am. Jur. *Contracts* § 20, p. 517 and §§ 226 and 227, p. 745 et seq.; *Western & Southern Life Ins. Co.* v. *Vale* (1937), 213 Ind. 601, 611, 12 N. E. (2d) 350; *Walb Construction Co.* v. *Chipman* (1931), 202 Ind. 434, 441, 175 N. E. 132. See also, *Evans* v. *Consumers' Gas Trust Company* (1891), (Ind.) 29 N. E. 398; 31 L. R. A. 673; *The Continental Insurance Company* v. *Vanlue* (1890), 126 Ind. 410, 416; 26 N. E. 119; 10 L. R. A. 843.

The written contract of employment sued upon herein, was for a two year period beginning on January 1, 1940 and ending January 1, 1942. It does not appear that a new written or other expressed contract was entered into by the parties at the end of the term or thereafter. Was this contract extended by implication after its termination, by reason of appellee continuing to work for appellants at the same salary and the same kind of work?

There can be no doubt that: "If a tenant for a year or a number of years holds over after the expiration of his term by efflux of time, the landlord at his ██ option and against the will or intention of the tenant, may hold the latter liable as a tenant for another year." *Akron Milling Co.* v. *Leiter* (1914), 57 Ind. App. 394, 405, 107 N. E. 99. However, this rule is influenced by §§ 3-1615 and 3-1616, Burns' 1933 and by a consideration of the nature of tenancy contracts. On this proposition, we can see no analogy between such

contracts and a contract for personal service, such as that created by the written contract in the instant case, in which no element of tenancy is involved. We do not think the statutory law of "tenancies from year to year," or "tenancies from month to month," in any event, should be made the law controlling in personal service employment contracts, or in services following the termination of such contracts by efflux of time, when no tenancy is involved. In *Akron Milling Co.* v. *Leiter, supra,* appellee had a written contract with appellant to work for one year at certain specified work, and at an agreed price. He continued to work for almost six months after the termination of his written contract. The court held, in substance, that by implication he was working under a new contract, for a like period of time, and for a like consideration. However, the court was careful to state at page 406:

> "It will be observed that in the contract under consideration, both the time of employment is fixed as one year, and the compensation is yearly, so that the case is brought clearly within all the cases cited."

In the instant case the time of employment is two years, and the compensation is yearly. If we should follow *Akron Milling Co.* v. *Leiter, supra,* and enlarging thereon hold that by implication, appellee was working under a new contract for a like period of time and compensation, we should find ourselves squarely confronted with our statute of frauds § 33-101, Burns' 1933, providing that no action shall be brought "upon any agreement that is not to be performed within one (1) year from the making thereof," unless the agreement or some memorandum thereof shall be in writing and signed by the party to be charged or by some person by him lawfully authorized.

We are aware that there are cases in other jurisdictions, some of which are cited by the learned judge in *Akron Milling Co.* v. *Leiter, supra,* adopting the ■ statutory rule in tenancies from year to year, and holding that continuing to work after the expiration of the written contract, extends the contract for another year, even though the original written contract was for two or more years. See 35 Am. Jur. *Master and Servant* §§ 15 and 23, pp. 454 and 460. However, in the above work following the rule announced in § 23, we find this statement:

> "This is true, at any rate, where the parties intended the original term of employment to be no longer than one year."

Since this statement agrees with the rule announced in *Akron Milling Co.* v. *Leiter, supra,* it seems logical to hold that our statute of frauds, hereinbefore noted, effectually prevents the implication of a new contract for a like period and consideration, when the original contract was for a period of more than one year. This position is fortified by the following quotation from 17 C. J. S. *Contracts,* § 4, p. 318.

> "Parties may be as firmly bound by implied contracts as by express contracts, aside from requirements of statutes of fraud or other control of the forms of contract."

Certainly the written contract sued upon herein could not be extended for a like period by implication, because of the statute of frauds.

When the written contract was made, the parties knew it would expire two years after January 1, 1940, and they put in their contract, that appellee was to receive $2500 per annum "during the two year period of this agreement, at the end of which period a new agree-

ment shall be made by the parties hereto." No such new agreement was made, and appellants' action asks to enforce a covenant in the written contract that was fully executed by both parties thereto long before the beginning of this action.

The negative covenant sought to be enforced is as follows:

"As part of the consideration of his employment the said Second Party agrees that in case he should leave the services of said First Parties, he will not, for a period of five years thereafter engage directly or indirectly on his own account, or in connection with others, in the business of soliciting or writing insurance of any kind in Wayne County, Indiana."

Simple words are used in this covenant. They present no ambiguity, and therefore, on this subject, the contract requires no judicial construction. *Hamilton* v. *Meiks* (1936), 210 Ind. 610, 616, 4 N. E. (2d) 536, 107 A. L. R. 1165; *Sprague* v. *State* (1932), 203 Ind. 581, 590, 181 N. E. 507; *Higgins* v. *St. Joseph Loan and Trust Co.* (1933), 98 Ind. App. 674, 678, 186 N. E. 910; *Buddenberg* v. *Welch* (1933), 97 Ind. App. 87, 185 N. E. 865. When taken in connection with the other provisions of the contract, and the situation of the parties at the time, as stated in the complaint, they are plain, simple and understandable. Any effort at holding them ambiguous, and then construing their meaning, would possibly result in the court making a contract for the parties different in effect from that which they made for themselves. This the courts may not do. *Fishers Grain Co., Inc.* v. *Sparks* (1945), 223 Ind. 133, 58 N. E. (2d) 932, 934; *Miles* v. *Indiana Service Corp.* (1933), 97 Ind. App. 400, 405, 185 N. E. 460; *International Shoe Co.* v. *Lacey* (1944), 114 Ind. App. 641, 648, 53 N. E. (2d) 636; 12 Am. Jur. *Contracts* § 228, p. 749, § 229, p. 751.

Evidently the negative covenant was placed in the contract for the benefit of appellants. If the court were required to construe it, the rule that should govern in such construction is well stated in 17 C. J. S., *Contracts* § 324, p. 755 thus:

"Terms of a contract which appear on their face to be inserted for the benefit of one of the parties will be considered as having been inserted and worded by him, and therefore in case of ambiguity will be construed against him; but this rule should not be invoked where the language is clear."

See also, *Illinois Pipe Line Co.* v. *Fitzpatrick* (1934), 207 Ind. 1, 8, 188 N. E. 771.

The services referred to in said covenant were the services appellee was to give under the written contract, from January 1, 1940, to January 1, 1942. The negative covenant could become effective and binding upon him only "in case he should leave the services of said First Parties" that he was then contracting to give. The averments of the complaint show that he not only did not leave such services, but that he served out the full term, and continued to work thereafter without any written or other express contract, for a period of 23 months, until December 1, 1943. The services rendered by appellant after the termination of the written contract, were not contemplated by the contract, and could not have been rendered under its terms, without a statement in writing to that effect properly executed by the parties. Leaving the services of appellants 23 months after the expiration of his written contract containing the negative covenant relied upon manifestly was no breach thereof by appellee, and therefore gave appellants no right of action therefor.

The trial court did not err in sustaining the demurrer to the complaint. The judgment is affirmed.

Note.—Reported in 65 N. E. (2d) 121.

DISSENTING OPINION.

YOUNG, C. J.—I cannot agree with the majority. They construe the so-called negative covenant to be applicable only during the initial two year period of the contract and to protect appellants against unfair competition only if the appellee breaches his contract and goes into business during said two year period.

The covenant is not ambiguous and I cannot limit it that way. If that conclusion is to be reached, words not there must be read into the contract. It must be changed to read as follows:

> "As a part of the consideration of his employment the said second party agrees that in case he should leave the services of said first parties, *during the two year period herein stipulated,* he will not, for a period of five years thereafter, engage directly or indirectly on his own account or in connection with others in the business of soliciting or writing insurance of any kind in Wayne County, Indiana."

The italicized words must be inserted. With them in, the force of the covenant is limited to the first two years. With them out there is no limitation. We have a contract which, in specific words, contemplates that there may be services by appellee to appellant after the initial two year term has expired, and we have the negative covenant in that contract effective when appellee leaves the services of appellants without limitation upon the time of such leaving. It may be during, at the end of, or after the initial two year term. That being

true, the acts complained of violated the negative covenant and should have been enjoined.

Of course we may not isolate the negative covenant. We must read it as a part of the entire contract. Not only is the negative covenant standing alone clear and unambiguous, but to me it is consistent with the language of the entire contract, including appellee's promise "that during his association, (with appellants) or thereafter, he shall not disclose to others any fact concerning the business of" appellant. It seems obvious that both parties appreciated the value of customer lists and data concerning expiration dates, insurance requirements and other similar information which became open to appellee as the result of his employment. Likewise, it seems apparent from the language of the contract as a whole, read in the light of all surrounding circumstances, that the negative covenant was deliberately inserted without limitation and with unmistakable intent to protect appellants at any time appellee might leave their service from the injurious consequences of competition on the part of appellee made possible by his use of confidential information and knowledge acquired by appellee in the course of his employment under the contract sued on.

Note.—Reported in 65 N. E. (2d) 121.