## DONAHUE *v.* PERMACEL TAPE CORPORATION.

[No. 29,251. Filed June 20, 1955.]

---

400

*Voor, Jackson, Grant & McMichael, William E. Voor and James E. Keating,* all of South Bend, for appellant.

*A. Lucius Hubbard,* of South Bend, for appellee.

ACHOR, J.—Appellee is engaged in the manufacture and sale of adhesives and adhesive tapes. Appellant was

formerly a sales representative for appellee. During such employment the parties entered into a written contract, the pertinent sections of which are as follows:

"1. Employee shall not divulge to others or use for his own benefit any confidential information obtained during the course of his employment with Company relating to sales, sales volume or strategy, customers, number or location of salesmen, formulae, processes, methods, machines, manufacturers, compositions, idea, improvements or inventions belonging to or relating to the affairs of the company, Johnson & Johnson or its subsidiary or affiliated companies, without first obtaining Company's written permission.

"2. Employee for a period of three (3) years after leaving Company's employment for any reason whatsoever, shall not, in the United States or Canada without first obtaining Company's written permission, engage in or enter the employment of or act as a sales agent or broker for the products of or as an advisor or consultant to any person, firm or corporation engaged in or about to become engaged in the manufacture of adhesive or adhesive tapes."

Thereafter appellant terminated his employment with appellee and, without the consent of appellee, became a sales representative for a competitor. An action for temporary and permanent injunctive relief followed. A temporary restraining order was issued and it is from that decree that this appeal is prosecuted.

In support of his appeal, appellant contends among other things that whereas, the scope of his employment with appellee was limited to northern Indiana, the restrictive covenant contained in the contract was unreasonably restrictive in that the restricted territory (United States and Canada) encompassed too large an area, and that therefore the contract in its entirety was contrary to public policy and void. The cause was submitted to the trial court upon the verified pleadings

which were admitted into evidence. It is upon these facts that the validity of the restrictive covenant in issue must be determined.

Appellee asserts that precedent is uniformly and firmly established that negative covenants in restraint of trade are valid if limited to the area of the business "sought to be protected" and cites numerous cases in support of that position. Appellee then relies on the fact that appellee's business, which it sought to protect, covered the entire area of the United States and Canada. However, it is to be observed that the "business involved" in each of the cases relates to either (1) employer-employee contracts where the use or divulgence of "trade secrets" is involved, or (2) the sale of a business or profession, in which cases the "business sought to be protected" is that of the business or profession *sold* by the covenantor.

Do the cases involved in either of the two above classifications provide either precedent or reason by which to support the validity of the covenant before us. It is admitted that an employee who is entrusted with "trade secrets" may make a valid covenant against the competitive use or disclosure of such trade secrets to the full extent of the affected area of the business of the employer. See *E. I. DuPont Powder Co.* v. *Masland* (1917), 244 U. S. 100; *Board of Trade* v. *Christie Grain & Stock Co.* (1905), 198 U. S. 236; *Briggs* v. *Butler* (1942), 140 Ohio St. 499, 45 N. E. 2d 757; *Harrison* v. *Glucose Sugar Refining Co.* (1902), 7 C. C. A., 116 F. 304.

It is appellee's contention that the facts in this case bring it within the precedent of the above cited cases for the reason that the contract in the case before us, by its express terms, contemplates that processes would be disclosed to appellant, and in addition confidential

selling information, including ideas, customer lists and the like would be made available to appellant as a result of his employment; that appellant did, in fact, acquire "confidential information" by virtue of his employment and that such information is classified by law as of the kind appellee is entitled to protect to the extent of the area of its business operations, which include United States and Canada.

However, the rule is firmly established, with reason, that in determining the validity of a negative covenant in restraint of competition that such contracts are to be strictly construed against the covenantee, and the test of their validity is dependent not merely upon the covenant itself but upon the entire contract and the situation to which it is related. *Super Maid Cook-Ware Corp.* v. *Hamil,* 50 F. 2d 830 (5th Cir. 1931), Certiorari denied 284 U. S. 677, 52 S. Ct. 138, 76 L. Ed. 572; *Murray* v. *Witter* (Ohio, 1952), 105 N. E. 2d 685; *Gates-McDonald Co.* v. *McQuilkin* (Ohio Appeals, 1941), 34 N. E. 2d 443; *Ridley* v. *Krout* (1947), 63 Wyo. 252, 180 P. 2d 124.

We therefore give our consideration to the covenant, the contract and the situation to which it related. While it is true that section one of the contract refers to "confidential information obtained during the course of employment," the pleadings, by which we must judge the factual situation, do not allege, nor can it reasonably be inferred therefrom that appellant obtained any "confidential information" which was of such a nature that it was related to the business of the covenantee in more than a general way outside the limited territory assigned to the covenantor as a sales representative. In fact, the express allegation of the complaint upon the subject of the breach of covenant indicates that appellee's only cause of complaint is that appellant is work-

ing for a competitor and is "soliciting trade" for it in competition with appellee. There is no allegation of fact as to the use or abuse of either "trade secrets" or "confidential information." The allegation is as follows:

"5. Plaintiff (appellee) alleges that said defendant (appellant) has totally disregarded the provisions of said Sales Personnel Agreement, *particularly paragraph 2 thereof,* in the following particulars, to-wit:

"(a) That defendant, in violation of said agreement, without the written consent of plaintiff entered into the employment of Arno Adhesive Tapes, Inc., a company engaged in the manufacture and sale of adhesive and adhesive tapes . . . and in competition with plaintiff and threatens to and will, unless restrained by this Court, continue in said employment. . . .

"(b) . . . (a)nd as a sales agent will continue in soliciting trade or business on behalf of competitors of plaintiff."

As far as we are able to ascertain or could reasonably infer from the facts before us, no "trade secrets" were divulged to appellant as a result of his employment and the only "confidential information" which he acquired, used and/or disclosed was the ordinary general information which a sales representative would acquire, such as related to sales methods, lists of customers, customer requirements, etc., *in the area worked.*

We conclude, therefore, that the cases heretofore cited as supporting the decree herein are neither persuasive nor controlling of the issue in this case.

We proceed to analyze the second class of cases which state that covenants in restraint of trade will be enforced if limited to the "area of the business involved"—those related to (2) *the sale of a business or profession.* The rule is well estab-

lished that a vendor may enter into a valid covenant not to compete within the area of the business or profession *sold*. *Wiley* v. *Baumgardner* (1884), 97 Ind. 66; *Consumers' Oil Company* v. *Nunnemaker* (1895), 142 Ind. 560, 41 N. E. 1048; *Bennett* v. *Carmichael Produce Co.* (1916), 64 Ind. App. 341, 115 N. E. 793; *Grand Union Tea Co.* v. *Walker* (1935), 208 Ind. 245, 195 N. E. 277; *Buanno* v. *Weinraub* (1948), 226 Ind. 557, 81 N. E. 2d 600; *Eisel* v. *Hayes* (1895), 141 Ind. 41, 40 N. E. 119; *Beatty* v. *Coble* (1895), 142 Ind. 329, 41 N. E. 590.

It must be noted that these cases relate to the good will, which is "the interest to be protected" in the business or profession *sold*, and they do not relate to the scope of the business of the buyer.

For example, if the seller operated stores in cities A, B and C, and he sells the store in city A, the cases do not hold that a negative covenant may be enforced prohibiting seller from continuing business in cities B and C, neither do they hold that the mere fact that the *buyer* operates a business throughout the State of Indiana that he may preclude a seller whose business was limited to a single county, from operating elsewhere within the State of Indiana. In fact the contrary rule is true. *Consumers' Oil Company* v. *Nunnemaker, supra.* The "good will" must be related to the particular transaction between the parties. As stated in Vol. 2, Page on Contracts, p. 1389, §789, as follows: "If for any reason the restraint is greater than is necessary to protect the good will, the contract is invalid."

By clear analogy the precedent of these cases, when applied to employer-employee covenants, clearly supports the conclusion that such covenants will be upheld, if limited to the area in which operation of the employee's activity was related to the good

will of the employer's business. Also, they provide strong precedent in support of the position that covenants which would restrict the competitive employment of an employee beyond the area of his former employment are void, unless such subsequent employment involves the use or divulgence of "trade secrets" of the former employer which. are related to the scope of the latter's business throughout the "restricted area."

As far as we are informed, our courts of review have not heretofore been called upon to consider the validity of a covenant not to subsequently engage in competitive activity (not involving "trade secrets") which covenant restricted the activity of the employee outside the area of his former employment. However, in the case of *Grand Union Tea Co.* v. *Walker, supra,* this court considered and sustained the validity of a covenant in an employer-employee contract wherein the employee covenanted not to compete with the employer "in territories and delivery routes . . . which had previously been assigned" to the employee.

When we look to the reported cases from other states and the authors of texts on the subject, we find that they provide strong precedent and persuasive reasoning in support of the position that (where "trade secrets" affecting the entire business are not involved), a covenant which would restrict an employee beyond the area of his prior operation are void, notwithstanding the fact that the employer's business covers a much greater area. 36 Am. Jur., §78, pp. 554-555, 36 Corbin on Contracts, §2518, 20 A. L. R. 861, 867-868, 9 A. L. R. 1456, 1461, 149 A. L. R. 633; *Hubman Supply Company* v. *Irvin* (Franklin County, Ohio, 1953), 119 N. E. 2d 152; *Gates-McDonald Company* v. *McQuilkin* (Ohio Appeals, 1941), 34 N. E. 2d 443; *Segal* v. *Fleischer* (Ohio Appeals, Hamilton County, 1952), 113 N. E. 2d 608;

*Murray* v. *Witter, supra; Briggs* v. *Butler, supra; Heflebower* v. *Sand* (D. C., 1947), 71 F. Supp. 607; *Sternberg* v. *O'Brien* (1891), 48 N. J. Eq. 370, 22 A. 348; *Burroughs* v. *Chollar* (Tex. Civ. App., 1935), 79 S. W. 2d 344; *Orkin Exterminating Co.* v. *Dewberry* (1949), 204 Ga. 794, 801, 51 S. E. 2d 699.

"Likewise a covenant restricting the employee from competing with portions of the business with which he was never associated is invalid. *Whiting Milk Co.* v. *O'Connell,* 277 Mass. 570, 179 N. E. 169, noted (1932), 45 Harv. L. Rev. 751." §1643A Williston on Contracts, at p. 4612, Note 11.

As heretofore stated, the facts before us present a case of first impression in this state. It is therefore our opportunity and responsibility to decide the case upon those principles which most fully do justice to both the parties themselves and to the public.

The general principles governing the legality of a contract in restraint of trade have been stated ■ by Williston on Contracts, §1636, pp. 4580- 4581:

"It is everywhere agreed that in order to be valid a promise imposing a restraint in trade or occupation must be reasonable. The question of reasonableness is for the court, not the jury; and in considering what is reasonable, regard must be paid to (a) the question whether the promise is wider than is necessary for the protection of the covenantee in some legitimate interest, (b) the effect of the promise upon the covenantor, and (c) the effect upon the public. . . ."

Among the many authorities supporting this rule are: *Samuel Stores, Inc.* v. *Abrams* (1919), 94 Conn. 248, 108 A. 541, 9 A. L. R. 1450; *May* v. *Young* (1938), 125 Conn. 1, 2 A. 2d 385, 119 A. L. R. 1445; *Briggs Co.* v.

*Mason* (1926), 217 Ky. 269, 289 S. W. 295, 52 A. L. R. 1344; *Sherman* v. *Pfefferkorn* (1922), 241 Mass. 468, 135 N. E. 568; *Club Aluminum Co.* v. *Young* (1927), 263 Mass. 223, 160 N. E. 804; *Walker Coal & Ice Co.* v. *Westerman* (1928), 263 Mass. 235, 160 N. E. 801; *Gordon Supply Co.* v. *Galuska* (1933), 113 N. J. Eq. 353, 166 A. 700; *Automobile Club of Southern N. J.* v. *Zubrin* (1940), 127 N. J. Eq. 202, 12 A. 2d 369; *Clark Paper & Mfg. Co.* v. *Stenacher* (1923), 236 N. Y. 312, 140 N. E. 708, 29 A. L. R. 1325; *Unity Coat & Apron Co.* v. *Battist* (1933), 148 Misc. 411, 264 N. Y. S. 801; *Milwaukee Linen Supply Co.* v. *Ring* (1933), 210 Wis. 467, 246 N. E. 567, 36 Am. Jur. 555, 17 C. J. S., Contracts, §254, p. 636, Restatement of Contracts, Vol. II, §516.

To what conclusion do we arrive when we apply the first above stated test to the facts in this case? Was (a) the covenant wider than was necessary for the protection of the covenantee (appellee) in some legitimate interest? There was no evidence from which the court could assume that the "confidential sales information, including ideas, customer lists and the like . . . made available" to appellant, were related (except in a general way) to appellee's business outside the limited area of his employment with appellee in northern Indiana. Therefore, the case clearly fails to meet the first test of "necessity for the protection of the covenantee" in the area prescribed—"the United States and Canada."

Furthermore, when we consider the second test above stated, namely, (b) the effect upon the covenantor, we find that the covenant also fails to meet the test of validity in this respect. We are here concerned with one of the most basic rights of man as recognized by our Judean-Anglican civilization, "that man is endowed by his Creator with the right to life, liberty and the

pursuit of happiness."[1] We perceive that these rights are inherent and therefore inalienable—whether on the part of governments or by man individually through his own act. By way of illustration only, because we perceive that man is inherently free, our courts will not interfere even with the folly of a man who voluntarily (without mistake, fraud or duress) bargains away his property accumulated through all his past years for a consideration of grossly disproportionate value. Courts will purposely close their eyes to such transactions, as Isaac was unwittingly blinded to the folly of Esau who sold his birthright to Jacob. Our society recognizes and is committed to guard the sacredness of every human personality and to make possible its fullest possible development. Therefore, in order to guarantee that every man shall, as of now and in the future, enjoy the freedom of "life, liberty and the pursuit of happiness," our courts will zealously guard every individual against even his own commitments which would limit or thwart *the greatest constructive employment and enjoyment of his faculties from this moment forward,* unless the manner of his living would contravene public policy or the personal property rights of another.

This brings us to a consideration of the property rights of both the parties to this action. As an incident to his business, the appellee (employer) was entitled to contract with regard to and thus to protect the good will of his business. Elements of this good will included "secret or confidential information," such as the names and addresses and requirements of customers and the advantage acquired through representative contact with the trade in the area of their application. These are property rights which the employer is entitled to protect. However,

---

1. Declaration of Independence; Art. 1, §1, Constitution of the State of Indiana.

the same is not true regarding the skill an employee has acquired, or the general knowledge or information he has obtained which is not directly related to the good will or value of employer's business. Knowledge, skill and information (except trade secrets and confidential information) become a part of the employee's personal equipment. They belong to him as an individual for the transaction of any business in which he may engage, just the same as any part of the skill, knowledge, information or education that was received by him before entering the employment. Therefore, on terminating his employment he has a right to take them with him. These things cannot be taken from him, although he may forget them or abandon them. *Jewel Tea Co.* v. *Grissom* (1938), 66 S. D. 146, 279 N. W. 544. An employee may contract to conditionally forego these personal attainments as a consideration for his employment *only*—where their use adverse to his employer would result in irreparable injury to the employer. This could occur only in the area of his employment. Therefore, a covenant which would limit his employment with a competitor beyond the scope of his present employment is void. *Roy* v. *Bolduc* (1943), 140 Me. 103, 34 A. 2d 479, 149 A. L. R. 630, 632-633.

In summary, we quote in approval the following statement from the case of *Roy* v. *Bolduc*, *supra*:

". . . (w)hile an employer, under a proper restrictive agreement, can prevent a former employee from using his trade or business secrets, and other confidential knowledge gained in the course of the employment, and from enticing away old customers, he has no right to unnecessarily interfere with the employee's following any trade or calling for which he is fitted and from which he may earn his livelihood and he cannot preclude him from exercising the skill and general knowledge

he has acquired or increased through experience or even instructions while in the employment. Public policy prohibits such undue restrictions upon an employee's liberty of action in his trade or calling. . . ."

Appellant's employment with appellee was limited to northern Indiana. There is no evidence that he acquired "trade secrets" or "confidential information" from appellee, the competitive use of which was related to or could result in irreparable injury to the business of the appellee throughout the breadth of "the United States and Canada," where the covenant attempted to restrict appellant's employment. We conclude, therefore, that when measured by each of the above three criteria (a), (b) and (c), that the covenant of the contract before us was unreasonable to the extent that it attempted to restrict the gainful employment of appellant beyond the area of his former employment with appellee.

The above conclusion gives rise to the final issue in the case. It is asserted that even though the covenant of the contract may not be enforceable as to all the area interdicted, that the equities of the case require enforcement in the area of appellant's former actual employment. In support of this position the following cases are cited involving the sale of a business, in which restrictive contracts have been held divisible and have been enforced as to the area of the business sold, although they have been held invalid as to the extended area beyond which the business operated: *Bennett* v. *Carmichael Produce Co., supra; Beard and Another* v. *Dennis* (1855), 6 Ind. 200; *Wiley* v. *Baumgardner, supra.* However, we are not permitted to consider that question or the equities which might support such a decision in this case. In each of the above cited cases the contracts specifically

described or referred to both the area of the business sold as well as the extended area interdicted. Whereas the contract before us does not describe the area of appellee's former employment but, on the contrary, the restricted territory is described in one indivisible whole —"The United States and Canada." We cannot rewrite the contract made by the parties and add to it matters which it does contain and then use the contract as rewritten as a basis for litigation, however justifiable equitable interference under the circumstances might seem to be. We conclude, therefore, the covenant of contract upon which this action is predicated, is unenforceable in its entirety. *Consumers' Oil Company* v. *Nunnemaker, supra.*

Therefore, the temporary restraining order heretofore issued is ordered dissolved.

Emmert, C. J., Bobbitt, J., Landis, J., and Arterburn, J., concur.

NOTE.—Reported in 127 N. E. 2d 235.