The HARVEST INSURANCE AGENCY, INC., and the Harvest Life Insurance Company, Appellants,

v.

INTER–OCEAN INSURANCE COMPANY, Appellee.

No. 06S04–8605–CV–451.

Supreme Court of Indiana.

May 15, 1986.

Theodore R. Boehm, Terrill D. Albright, Brian K. Burke, Baker & Daniels, Indianapolis, James P. Buchanan, Buchanan & Buchanan, Lebanon, for appellants.

James A. McDermott, Michael Rosiello, Barnes & Thornburg, Indianapolis, Thomas Whitsitt, Peyton, Giddings, Whitsitt, Baker & McClure, Lebanon, for appellee.

CIVIL PETITION TO TRANSFER

GIVAN, Chief Justice.

This appeal, which is before the Court on appellee's Petition to Transfer, arose from the granting by the trial court of appellee's motion for a preliminary injunction. The Court of Appeals, Fourth District, dissolved the order. *Harvest Insurance Agency, Inc. v. Inter-Ocean Insurance Co.* (1985), Ind.App., 478 N.E.2d 98, 110. Although we agree with the ultimate result reached by the Court of Appeals, several of the issues addressed in that opinion are in

need of clarification. We therefore grant the petition and vacate the opinion of the Court of Appeals.

The Harvest Insurance Agency (appellant) is engaged in the sale of various kinds of insurance policies, primarily in farm and rural areas. Between 1948 and 1983, appellant sold policies underwritten and issued by Inter-Ocean Insurance Company (appellee). Appellant promoted the sale of the insurance under the sponsorship of its affiliated farm magazines.

In 1978, the parties executed six separate contracts, all virtually identical, which provided that appellant was to be appellee's exclusive general agent for the sale of appellee's accident and health insurance policies in Indiana (except in eastern Indiana), Ohio, Michigan, Missouri, Nebraska, Colorado and Kansas. The agreements provided that in the event of the termination of the relationship appellee would continue to pay renewal commissions to appellant for policies purchased during the life of the contracts. Each agreement also contained the following non-competition covenant:

"12. *Insurance Sales After Termination of Agreement.* After the date of the termination of this Agreement either of the parties hereto, directly or through intermediaries, shall have the right to solicit Inter-Ocean policyholders for sales of additional insurance but *neither shall have the right to replace existing coverage.* Any such solicitation by General Agent for sales of insurance underwritten by other than Inter-Ocean shall not be deemed a violation of this Agreement. Additional insurance shall mean insurance sold to supplement or augment the insured's existing coverage and which does not replace such existing coverage." (emphasis added).

In June of 1983, appellant tendered written notice that the relationship would be considered terminated upon the expiration of the agreements on December 31. Several months later, appellant instituted an action against appellee and two of appellant's former employees alleging misappropria-

tion of trade secrets and confidential information, unfair competition and breach of contractual and fiduciary obligations. Appellee then filed a counterclaim on February 6, 1984, in part requesting the court to enjoin appellant from replacing its insurance policies.

The trial court entered an injunction on March 19, 1984. Appellant was enjoined from replacing appellee's accident and health policies sold under the agency contracts in the aforementioned seven states. In its conclusions of law, the court stated that the non-competition covenant was enforceable, "even though lacking geographical or time limitations," because replacement was forbidden only as to a specific and limited class of policyholders and thus "there [was] no need for limitations in other terms." The court further stated that appellee was likely to succeed on the merits of the case and that appellant had willfully violated a contract right of appellee's.

On appeal of the granting of injunctive relief, the Court of Appeals dissolved the decree. *Harvest, supra* at 110. The court found that the non-competition covenant was unenforceable under Indiana law because the covenant lacked reasonable temporal and geographic restrictions. *Id.* at 108–09. Additionally, the court found that appellee had no business interest worthy of protection, *Id.* at 109, and that appellee failed to establish a *prima facie* case for injunctive relief in the states other than Indiana, based on its conclusion that appellee, having the burden of proof on the issue of public policy, did not establish the legality of each contract with respect to its individual state of performance. *Id.* at 106.

The result reached by the Court of Appeals is correct, principally for the reason that the covenant clearly lacks a reasonable temporal restriction. We disagree, however, with the court's conclusions that appellee had no business interest which the trial court could protect by equitable decree and that appellant had an evidentiary burden to prove the law applicable in each of the states included within the scope of the injunction.

The granting or denial of a preliminary injunction rests within the sound discretion of the trial court. The scope of appellate review is limited to a determination of whether there was a clear abuse of that discretion. *The Indiana Annual Conference Corp., et al. v. Lemon* (1956), 235 Ind. 163, 131 N.E.2d 780.

In order to obtain injunctive relief, appellee had the burden of showing that: 1) its remedies at law were inadequate, thus causing irreparable harm pending resolution of the substantive action; 2) it had at least a reasonable likelihood of success at trial by establishing a *prima facie* case; 3) its threatened injury outweighed the potential harm to appellant resulting from the granting of an injunction; and 4) the public interest would not be disserved. *The Indiana Annual Conference Corp., supra; Rees v. Panhandle Eastern Pipe Line Co.* (1978), 176 Ind.App. 597, 377 N.E.2d 640.

■ The requirement that appellee had to establish a *prima facie* case centers on the question of the validity of the non-competition covenant. Covenants not to compete are in restraint of trade and are not favored by the law. *Licocci v. Cardinal Associates, Inc.* (1983), Ind., 445 N.E.2d 556. They are strictly construed against the covenantee and enforced only if reasonable. *Donahue v. Permacel Tape Corp.* (1955), 234 Ind. 398, 127 N.E.2d 235. The issue of reasonableness is a question of law which rests upon facts gleaned from the totality of the circumstances. *Raymundo v. Hammond Clinic Association* (1983), Ind., 449 N.E.2d 276; *Frederick v. Professional Building Maintenance Industries, Inc.* (1976), 168 Ind.App. 647, 344 N.E.2d 299.

■ As the parties were engaged in a principal-agent relationship, we will employ the stricter scrutiny utilized in reviewing employer-employee covenants. *See, e.g., Licocci, supra; Captain and Co., Inc. v. Towne* (1980), Ind.App., 404 N.E.2d 1159. Such covenants are deemed reasonable only where the restraint is reasonably necessary to protect the employer, is not un-

reasonably restrictive of the employee and is not against public policy. *Donahue, supra.* The determination of the reasonableness of the restraint focuses on the legitimate interests of the employer which might be protected and the protection granted by the covenant in terms of time, space and the types of activity proscribed. *4408, Inc. v. Losure* (1978), 175 Ind.App. 658, 373 N.E.2d 899; *Frederick, supra.*

■ The crux of the restraint at issue here is that "neither [party] shall have the right to replace existing coverage." The Court of Appeals determined that the words "existing coverage" pertain to appellee's " 'insurance policies in being after the contract terminates,' " including policies sold after the termination of the contracts. *Harvest, supra* at 107–09. The court also determined that appellant would be restrained from replacing appellee's policies in at least twenty-five states where appellee deals in health and accident insurance. *Id.* at 108.

Appellee contends the Court of Appeals, by so construing the restraint, rendered the words of the covenant meaningless and thereby failed to take into account the intent of the parties in executing the contracts. Appellee argues that the covenants, when read in conjunction with the balance of the individual contracts, are limited in geographical scope to the state involved in each contract and in temporal scope to the life of those policies in force at the termination of the agreements.

When the clear intent of the parties can be determined from their written contract, this Court will construe their contract according to that intent. *Licocci, supra.* The test of the validity of a non-competition covenant is dependent not merely upon the covenant itself but upon the entire contract and the situation to which it is related. *Donahue, supra; Jenkins v. King* (1946), 224 Ind. 164, 65 N.E.2d 121. However, we will not remake a contract for the parties. *Licocci, supra; Jenkins, supra.*

Appellee relies heavily on *Licocci, supra,* which it contends has been contravened by the Court of Appeals opinion. In that case,

one of three contractual covenants involved prohibited two former employees from selling the same products to any of their former customers for one year. *Licocci, supra* at 557. The Court of Appeals had reversed a preliminary injunction because it found that the restriction failed to impose adequate spatial limitations. *Id.* at 562. On transfer, this Court found that the limitation was reasonable because the parties had intended the geographical scope to be limited to the formerly assigned sales territories. As stated by Justice Pivarnik,

"We would have to strain the contractual language and pervert the parties' obvious intent to infer that a large and indefinite area was actually contemplated due to the possibility that one or more of the former Cardinal customers may relocate outside of the former assigned sales territories. Appellee ... correctly points out that when the clear intent of the parties can be determined from their written contract, the court should construe their contract according to that intent. Accordingly, we find that the parties ... intended a reasonable spatial limitation to restriction number three, to-wit: the former assigned sales territories." *Id.* at 562–63.

Here, in regard to the issue of the temporal limitation, we find that the parties intended the words "existing coverage" to pertain to those policies in force at the time of the termination of the agreements, and not to any policies sold thereafter. However, we cannot agree with appellee's contention that we should construe the covenant to contain a reasonable time limitation because the parties have a mutual and continuing economic interest in the vested renewal commissions and the restriction lasts only as long as the existing policies remain in force.

Unlike the one year limitation contained in the disputed covenant in *Licocci,* there is no temporal limitation on the face of the covenant at issue in the instant case. Even assuming the parties intended the restraint to apply only to those policies in force at the time of the termination of the agree-

ments, and considering the restraint in light of the entire contracts and the surrounding circumstances, no inference can be drawn that there is a time limitation of definite and reasonable duration. The lifespan of the policies underwritten by appellee and in force at the termination of the agency relationship is unascertainable. If appellee continuously renewed those policies, it would effectively preclude appellant from competing, i.e., replacing those policies with its own, for an indefinite period.

The issue of the geographical limitation is a closer question. Although there is no facial geographical limitation, the fact that each contract applied to a particular state (one contract applied to two states) in which appellant was appellee's exclusive general agent lends credence to appellee's argument that the intent of the parties was to limit the restraints to appellant's former territories. That interpretation would bring the limitation within the established rule that in most instances a spatial restraint upon a former employee must be limited to the area of the employee's sales territory. *Licocci, supra; Donahue, supra.*

Nevertheless, even though the spatial restraint is at least arguably reasonable, the covenant is invalid due to the indefinite nature of the temporal limitation. The lack of a reasonable time restraint is enough to render a non-competition covenant void and unenforceable. *Licocci, supra; see also College Life Insurance Co. of America v. Austin* (1984), Ind.App., 466 N.E.2d 738; *Frederick, supra.*

We hold that the non-competition covenant is void and therefore that the trial court erred in entering the injunction based in part on its conclusion that appellee had made a *prima facie* showing that the covenant was valid and enforceable.

■ Although that aspect of the case is determinative, two conclusions of the Court of Appeals require clarification. First, the court concluded that appellee had not created any goodwill and therefore possessed no business interest worthy of protection. *Harvest, supra* at 109. Its conclusion was based on a determination that appellant was solely responsible for the creation of any existing goodwill by means of solicitation of business through its affiliated farm publications and through its agents' personal contact with policyholders. *Id.*

Regardless of appellant's actions taken to solicit business and to develop personal contacts with customers, appellee, as its principal, had an interest in the advantage acquired through appellant's representative contact with customers on its behalf. *Licocci, supra; Donahue, supra.* Further, appellee's repeat business, namely the renewal of policies in force, is also an interest worthy of protection. *Licocci, supra; see Rollins v. American State Bank* (1986), Ind.App., 487 N.E.2d 842; *Seach v. Richards, Dieterle & Co.* (1982), Ind.App., 439 N.E.2d 208. It cannot be said, as a matter of law, that appellee did not possess a business interest worthy of protection.

■ Secondly, the Court of Appeals concluded that appellee, in requesting the trial court to enjoin appellant from replacing its policies in the six states other than Indiana, was compelled by choice of law principles to establish the legality of each contract with respect to its individual state of performance. *Harvest, supra* at 106. Thus the court stated that it was "incumbent for [appellee], *within its burden of proof,* to establish what those state laws were with respect to each noncompetition [sic] covenant." *Id.* (original emphasis). We do not address the choice of law question, or the question of the possible waiver of the issue by appellant by failing to raise it until filing its motion to correct error, but rather wish to clarify the apparent conclusion of the Court of Appeals that appellee had an evidentiary burden of proving the law of the other six states included within the scope of the injunction.

Given the public policy component of the test of the reasonableness of a non-competition covenant, each of those states has a material interest in the transaction and the parties. *South Bend Consumers Club v. United Consumers Club* (N.D.Ind.1983),

572 F.Supp. 209. "It is generally agreed that a state has an interest in regulating the extent to which it will allow parties to restrain trade through the use of restrictive covenants." *Id.* at 213. We would note, however, that the only foreign law possibly at issue here is that of Michigan, as the parties have agreed that the law of the other five states is substantially similar to Indiana law.

It is well established in Indiana that if the law of another state is not pleaded or no steps are taken to require the court to take judicial notice of that law in accordance with the Uniform Judicial Notice of Foreign Law Act (UJNFLA), Ind.Code § 34–3–2–1 *et seq.*, the court will presume the law in that jurisdiction is substantially the same as the law in Indiana. *Jameson Chemical Co., Ltd. v. Love* (1980), Ind. App., 401 N.E.2d 41; *Igleheart Brothers, Inc. v. John Deere Plow Co.* (1943), 114 Ind.App. 182, 51 N.E.2d 498; *see Baltimore & Ohio Southern Ry. Co. v. Reed* (1902), 158 Ind. 25, 62 N.E. 488. If a party does raise the question of the law of another state, and in doing so complies with the notice and other provisions of the UJNFLA, the court shall take judicial notice of that law. Ind.Code § 34–3–2–1; *see* In.R.Tr.P. 44.1(B). While a court may inform itself of foreign law in any manner it deems proper including calling upon counsel to aid it, Ind.Code § 34–3–2–2, there is no factual burden on a party to prove the foreign law.

In its opinion the Court of Appeals stated that the injunction was improper as to the six states other than Indiana "because in the absence of appellee's facts, the trial court could not, and did not, have findings of fact sufficient to sustain an injunction in those states." *Harvest, supra* at 106. The question of foreign law is one of law rather than one of fact. *Revlett v. Louisville & N.R. Co.* (1943), 114 Ind.App. 187, 51 N.E.2d 95.

> "[O]ne relying upon a foreign law need merely call attention in the manner provided by the statute of his intent so to do.... When this is done it becomes the duty of the court to determine the law and in doing this it may call upon counsel to aid it." *Id.* at 193–94, 51 N.E.2d at 98.

Transfer is granted and the opinion of the Court of Appeals is vacated. The preliminary injunction is dissolved and the case is remanded to the trial court for further proceedings.

PIVARNIK and SHEPARD, JJ., concur.

DeBRULER, J., concurs in result with separate opinion.

DICKSON, J., not participating.

DeBRULER, Justice concurring in result.

With regard to the last issue considered in the majority opinion, of paramount importance is a requirement that proper source material be placed before the judge from which he may derive and the lawyers may point out, the pertinent foreign law provisions. I think this can only be done in our state judicial system by placing the risk of non-availability of such source material upon the party who asserts an issue requiring consideration of foreign law, and to include dismissal or a finding against such party within that risk. Formal proof of the law is not necessary but at the same time need not be prohibited. Placing the source material before the court and asking that judicial notice be taken of the law within it is an appropriate process for getting this done. But, when foreign law, such as a city ordinance or code, state statute, or administrative rule or regulation, must be applied by the court to arrive at a true finding and is not present within the court's own resources, and the party stands mum, the court should be authorized to throw a claim or defense out.