John C. ACKERMAN, Appellant,

v.

KIMBALL INTERNATIONAL, INC., Appellee.

No. 19S04–9507–CV–835.

Supreme Court of Indiana.

July 12, 1995.

**508**

Joseph L. Verkamp, Jasper, for appellant.

William L. Shaneyfelt, Schneider, Lett & Shaneyfelt, Jasper, Mark J. Ruehlmann, Taft, Stettinius & Hollister, Cincinnati, OH, for appellee.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

This case results from an employer's attempt to enjoin a former employee from accepting employment with the employer's competitors and disclosing trade secrets to those competitors. The employer based its claim for injunctive relief on two grounds: (1) the Uniform Trade Secrets Act, Indiana Code §§ 24-2-3-2 & 3 (1993) and (2) two covenants made by employee in his employment contract, one not to disclose trade secrets and the other not to compete with employer in product development and manufacturing. While we generally agree with the trial court and Court of Appeals' disposition of this case, *Ackerman v. Kimball Intern., Inc.* (1994), Ind.App., 634 N.E.2d 778, we write to clarify that otherwise unenforceable covenants not to compete do not automatically become enforceable solely because an employee is in possession of trade secrets.

### Facts

Evansville Veneer, Evansville, Indiana, is a division of Kimball International, Inc. It manufactures wood veneer for distribution in twenty-eight states, Canada, and Europe.

John C. Ackerman commenced employment with Kimball in 1963. In 1974, Ackerman entered into an employment agreement in which he agreed to remain in Kimball's employ, and Kimball agreed to continue to employ him. In the employment agreement, Ackerman made two promises or covenants at issue in this case. Paragraph 3 of the agreement provided in part:

3. Employee agrees that he will carefully guard and keep all information, knowledge or data of Employer or of any customer which Employee may obtain during the course of his employment, and further agrees that he will not disclose at any time any such information, knowledge or data of Employer or any customer of Employer to others, except information, knowledge or data as may be generally known to the public.

Paragraph 4 of the agreement provided:

4. Employee agrees that he will not without prior written consent of Employer, either during the period of his employment or within one year after the termination thereof, become directly or indirectly engaged in inventing, improving, designing, developing or manufacturing, any products directly competitive with the products of Employer.

By the late 1970's Ackerman had worked his way up to Executive Vice–President of the Ply Products Division. In this position he supervised four separate Kimball plants, including Evansville Veneer, and received an annual, pre-bonus salary in excess of $90,000.

Late in 1992, Ackerman was demoted to General Manager of Evansville Veneer, and his annual salary was reduced to $62,000. In June of 1993, Ackerman interviewed with and received an offer of employment from Genwove, one of Kimball's competitors in the wood veneer market. Ackerman declined this offer. In August, 1993, Ackerman received a more attractive offer from Genwove featuring a position overseeing four separate United States divisions of Genwove, two of which produced wood veneer, with an annual salary in excess of $100,000. While Ackerman was still considering this offer, he was informed that his employment with Kimball was to be terminated. During the same

meeting that Ackerman learned of his termination, he agreed to and executed a separation agreement that entitled him to a $15,000 salary allowance and placement counseling benefits of up to $35,000. The separation agreement in part provided:

(8) *Trade Secrets*—John agrees that he will not submit or use Kimball secrets, proprietary or confidential information on behalf of himself or any other Employer or competitor of Kimball. John promises that he has taken no such proprietary information or other property of Kimball in the past and has none presently in his possession.

This termination agreement also provided that it did not supersede the 1974 employment agreement, to which it was attached.

Unbeknownst to Kimball, on the day prior to and on the morning of his termination, Ackerman requested and received Kimball customer and supplier lists. Ackerman accepted Genwove's offer of employment the day after his termination. A few days after his termination, Kimball learned of Ackerman's requests for the customer and supplier lists. When Ackerman was questioned about the whereabouts of these lists, he stated that they were in his old office at Evansville Veneer. The customer and supplier lists were never located.

Kimball sought a temporary restraining order and preliminary injunction to prohibit Ackerman's employment with Genwove and to enforce the covenant not to compete in Ackerman's employment agreement and its remedies under both the separation agreement and the Uniform Trade Secrets Act for Ackerman's threatened disclosure or use of Kimball's trade secrets. The trial court enjoined Ackerman from accepting direct or indirect employment with Genwove or with any other of Kimball's competitors in the veneer business. Ackerman brought a mandatory interlocutory appeal from the trial court's order under Indiana Appellate Rule 4(B)(3).

The Court of Appeals addressed three issues in its decision. First, the court determined that the 1974 employment agreement was not unenforceable due to lack of consideration because "an employer's promise to continue at will employment is valid consideration for the employee's promise not to compete with the employer after his termination." *Ackerman*, 634 N.E.2d at 778 (citing *Leatherman v. Management Advisors, Inc.* (1983), Ind., 448 N.E.2d 1048, 1050). In this regard, the Court of Appeals also held that Ackerman's execution of the termination agreement ratified the 1974 employment agreement. *Ackerman*, 634 N.E.2d at 781 n. 2. Second, the Court of Appeals concluded that because the Kimball customer and supplier lists and pricing information were protectable trade secrets, Kimball could both enforce the covenants contained in paragraphs 3 and 4 of the 1974 employment agreement and maintain an action for statutory trade secrets claims. *Id.* at 784. Third, the Court of Appeals found that the trial court did not abuse its discretion in determining that Kimball had met its burden of showing that it was entitled to injunctive relief against Ackerman. *Id.* at 786.

## Discussion

■ We agree with the Court of Appeals' analysis that the 1974 employment agreement was not unenforceable due to lack of consideration, both because Ackerman received Kimball's promise to continue at-will employment and because Ackerman ratified the 1974 employment agreement by executing the termination agreement. We expressly adopt and incorporate by reference that portion of the Court of Appeals opinion captioned "Issue One: Consideration for At–Will Employment Contract," 634 N.E.2d at 780–81. Ind.Appellate Rule 11(B)(3).

We write, however, to address the Court of Appeals' treatment of Ackerman's claim that the covenants contained in paragraphs 3 and 4 of the 1974 employment agreement were unenforceable, largely because they contained no geographical limitation. In *Harvest Ins. Agency, Inc. v. Inter–Ocean Ins. Co.* (1986), Ind., 492 N.E.2d 686, this court discussed the principles that govern actions to enforce covenants not to compete with a previous employer:

Covenants not to compete are in restraint of trade and are not favored by law. *Licocci v. Cardinal Associates, Inc.* (1983),

Ind., 445 N.E.2d 556. They are strictly construed against the covenantee and enforced only if reasonable. *Donahue v. Permacel Tape Corp.* (1955), 234 Ind. 398, 127 N.E.2d 235. The issue of reasonableness is a question of law which rests upon facts gleaned from the totality of the circumstances. *Raymundo v. Hammond Clinic Association* (1983) Ind., 449 N.E.2d 276....

Such covenants are deemed reasonable only where the restraint is reasonably necessary to protect the employer, is not unreasonably restrictive of the employee and is not against public policy. *Donahue, supra.* The determination of the reasonableness of the restraint focuses on the legitimate interests of the employer which might be protected and the protection granted by the covenant in terms of time, space and types of activity proscribed. *4408, Inc., v. Losure* (1978), 175 Ind.App. 658, 373 N.E.2d 899....

....

The test of the validity of a non-competition covenant is dependent not merely upon the covenant itself but upon the entire contract and the situation to which it is related.... *Jenkins v. King* (1946), 224 Ind. 164, 65 N.E.2d 121.

*Id.* at 688–89 (some citations omitted). In *Donahue v. Permacel Tape Corp.* (1955), 234 Ind. 398, 127 N.E.2d 235, we said:

[C]ovenants that would restrict the competitive employment of an employee beyond the area of his former employment are void, unless such subsequent employment involves the use or divulgence of "trade secrets" of the former employer that are related to the scope of the latter's business throughout the "restricted area."

*Id.* at 407, 127 N.E.2d at 239.

■ Relying on *Donahue,* the Court of Appeals concluded, in essence, that if trade secrets were involved, then the covenants not to compete were enforceable notwithstanding the lack of geographical limitation on the restrictions. See *Ackerman,* 634 N.E.2d at 782, 786. *Donahue,* however, only says that if trade secrets are involved, then a covenant not to compete without geographic limitation is not *per se* unreasonable and void. We think that once it is established that trade secrets are involved, and when the covenant not to compete contains no geographic limitation, it must still be inquired further whether that lack of geographic limitation—together with all the other provisions of the covenant—is reasonably necessary to protect the employer, is not unreasonably restrictive of the employee, and is not against public policy. *Harvest Ins. Agency,* 492 N.E.2d at 688–89.

■ We need not make that inquiry in this case, however, because it is clear from the record that the trial court granted Kimball's *statutory* claim for injunctive relief under Indiana Code § 24–2–3–3, which grants a trial court broad discretion to fashion injunctive relief "to eliminate commercial advantage that otherwise would be derived from the misappropriation [of trade secrets.]" Ind.Code § 24–2–3–3(a). And indeed, the injunction issued in this case is much broader than the covenant not to compete in paragraph 4 of Ackerman's employment agreement: the injunction forbade Ackerman from "[a]ccepting or commencing direct or indirect employment with Genwove or any other competitor of Kimball in the veneer lumber business, including any type of consulting...."; paragraph 4 of his employment agreement would only prevent Ackerman from becoming "directly or indirectly engaged in inventing, improving, designing, developing or manufacturing, any products directly competitive with the products of Employer." The trial court limited the duration of the injunction to one year.

We reject Ackerman's argument that Indiana Code § 24–2–3–3(a), which permits a court to enjoin "actual or threatened misappropriation" of trade secrets, does not permit a court to enjoin the acceptance of employment with a competitor who might benefit from the misappropriation. Misappropriation of a trade secret includes disclosure or use of the secret if the secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use. Ind. Code § 24–2–3–2(2)(B)(ii). The trial court specifically found that in light of Ackerman's pre-departure harvesting of Kimball's pro-

prietary information, there was a threat of misappropriation. It also found—and Ackerman does not dispute—that Kimball's remedies at law, should misappropriation occur, would be inadequate. We think on the facts of this case, enjoining Ackerman from working for Kimball's competitors for a year was arguably necessary to meet the threat of disclosure of Kimball's trade secrets. Were the trial court not permitted, on facts such as these, to enjoin Ackerman for a limited period from being employed by any of Kimball's competitors, Kimball might, under the Trade Secrets Act, have a right without a remedy. We cannot believe that this is what the legislature intended, and we cannot say, consequently, that the trial court abused its discretion in issuing its injunction. *Amoco Prod. Co. v. Laird* (1993), Ind., 622 N.E.2d 912, 915; *Harvest Ins. Agency,* 492 N.E.2d at 688.

### Conclusion

Accordingly, we grant transfer and expressly adopt and incorporate by reference "Issue One" of the Court of Appeals' opinion. Ind.Appellate Rule 11(B)(3). The judgment of the trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and SELBY, JJ., concur.