## GATES-McDONALD COMPANY v McQUILKIN

Ohio Appeals, 8th Dist, Cuyahoga Co

No 17937. Decided Mar 17, 1941

Bloomfield & Orr, Cleveland, for plaintiff-appellant.

Robert Merkle, Esq., Cleveland, for defendant-appellee.

## OPINION

By MORGAN, J.

The plaintiff in this case is seeking an injunction against the defendant for the purpose of enforcing a negative covenant in a contract of employment.

The plaintiff is an Ohio corporation engaged in furnishing a service throughout the state of Ohio chiefly in the Workmen's Compensation and Social Security field.

Prior to April, 1937, the defendant for three and one-half years had been in the employ of the Industrial Commis-

sion of Ohio. On April 29, 1937, plaintiff and defendant entered into a contract of employment which was later superseded by a contract dated February 7, 1938. By the terms of this latter contract the defendant agreed to continue in the employment of plaintiff, and the plaintiff agreed to employ the defendant beginning February 7, 1938, for a period of three (3) months thereafter, "and so much longer thereafter as said party of the first part (the plaintiff) may care to do so."

The defendant agreed that if at any time his services with the plaintiff should cease and terminate, the defendant would not, within three years thereafter, "make his services available directly or indirectly to Ohio employers in the matter of rendering them any service in connection with their workmen's compensation insurance matters, without first securing the written consent of the party of the first part."

The defendant had charge of the plaintiff's Cleveland office, and continued therein until September 1, 1938, when, without previous intimation of plaintiff's intention, he was discharged.

About six weeks after his discharge, the defendant engaged on his own account in Cuyahoga County in the business of selling a service to employer's in workmen's compensation matters, and in this work he solicited a few of plaintiff's clients and was employed by at least two of them.

The question to be determined in this case is the validity or invalidity of the negative covenant in the contract between the parties.

The plaintiff claims that it has developed a system in the nature of a trade secret connection with its business which "should not be disclosed or used by former employees or anyone to secure new business or take away plaintiff's customers."

We have examined the evidence in this case with care and find that the essential part of the system developed by the plaintiff is a more accurate and detailed record of all losses of each employer, enabling plaintiff to check each employer's rate to the last detail. When

Mr. Gates, Vice President of the plaintiff, was shown a form prepared and used by the Industrial Commission he stated it would be possible to keep the information on it which the plaintiff keeps on its specially prepared cards.

It is also undisputed in this case that the defendant did not do any of the actuarial work for the plaintiff in figuring losses and rates. According to plaintiff it was expected of defendant that he would spend ninety per cent (90%) of his time selling the plaintiff's service, to employers, and the balance on investigations and attendance at hearings and rehearings.

The only purpose of acquainting the defendant with the plaintiff's system was to enable the defendant to use it as a sales argument to influence prospective employers to purchase plaintiff's service. It is difficult to see how plaintiff's system can be in the nature of a trade secret when it was communicated to the defendant so that he in turn might divulge it to prospective customers, to persuade them to avail themselves of plaintiff's service.

There was no evidence offered that the defendant is making any use of plaintiff's special system either in securing customers or handling his business. The defendant testified without contradiction that he is using only the forms prepared by the Industrial Commission.

The cases cited in plaintiff's brief, involving the protection of secret processes or trade secrets are not therefore controlling in the instant case. A case more nearly similar is Club Aluminum Company v Young et, 263 Mass. 223. The defendant entered plaintiff's employ as a salesman under a contract which provided that for one year after its termination he would "not engage in the sale of aluminum cooking utensils by a similar plan" to that used by the plaintiff in certain States. The bill sought to enjoin the defendant from remaining in the employ of a competitor, contrary to the terms of the contract. The court held that the plaintiff failed to prove that the training given by the plaintiff to the employee,

"was based upon secrets possessed by the plaintiff to the exclusion of others and therefore did not show a wrongful use by the defendant of knowledge of trade or business secrets of the plaintiff." The contract was held to be an unreasonable restraint of freedom of employment, and invalid.

There is hardly any difference between the parties as to the law in this case. The test of the ▮▮▮▮▮▮ validity of such a covenant is stated in **9 O. Jur., 370,** as follows:

"The test generally applied in determining the validity of such a covenant is whether or not the restraint is necessary for the protection of the business or good will of the employer, and if so, whether it imposes on the employee any greater restraint than reasonably necessary to secure to the business of the employer or the good will thereof such protection."

The negative covenant in this case is in restraint of trade because it "restricts a promissor in the exercise of a gainful occupation." (Restatement of Contracts, §513). Not every restraint of trade however is illegal. "A bargain in restraint of trade is illegal if the restraint is unreasonable." (Restatement of Contracts §514). A restraint of trade is unreasonable, if, among other things, it "(a) is greater than is required for the protection of the person for whose benefit the restraint is imposed, or (b), imposes undue hardships upon the person restricted." (Restatement of Contracts §515).

The record in this case discloses that there are in round figures 45,000 employers in Ohio and 15,000 employers in Cuyahoga County who pay premiums to the State Workmen's Compensation Fund. Mr. McDonald, the President of the plaintiff, testified that the company does not solicit clients who pay into the fund less than $600.00 a year in premiums, or industries with low basic rates. He estimated that there are about 5000 employers in the State and 1000 employers in Cuyahoga County who are members of the class

for which plaintiff's service is intended.

The contract, however, relied upon by the plaintiff in this case would restrain the defendant from soliciting business from the 40,000 employers in the State and the 14,000 employers in Cuyahoga County who are neither actual or potential customers of the plaintiff. It seems clearly to follow that the negative covenant in this case is invalid because the restraint of trade provided in the contract "is greater than is required for the protection of the person for whose benefit the restraint is imposed." (Restatement of Contracts §515) and because the negative covenant imposes on the employee a greater restraint than is "reasonably necessary to secure protection to the business of the employer." (**9 O. Jur. 370**).

We approve the statement of the Court in Cook Ware Corporation v Hamil et, 50 Fed. Rep. (2nd) 831:

"It is a settled principle of law that no man may, per se, contract with another that the other will not follow a calling by which he may make his livelihood. It is only when they are incidental to some contract which is reasonable in its purpose and its terms, and it is necessary to the protection of the rights of the employer under such contract, that the validity of restrictive covenants will be recognized and enforced, and then only when they are themselves reasonable, no public interests are involved, and the restriction is limited to the very point of the necessity of protecting contract rights, to which the covenant is incidental. In short, it is never the covenant itself, but the covenant in relation to the facts of the situation or contract to which it is incidental, which may be valid."

The plaintiff relies on cases of which Scott v Gillis, 197 N. C. 223 is a good example. In that case the employe was restricted by contract after the termination of his employment from soliciting or doing business "as an accountant for any one of the plaintiff's customers for a period of three years."

A contract restraining an employe from soliciting his employer's customers for a limited period after the termination of employment is obviously a very different contract from the one in the instant case.

For the reasons stated, we find that the restraint imposed on the defendant in the negative covenant of the contract under consideration imposes undue hardship upon him and is greater than is required for the plaintiff's protection and is therefore invalid.

Decree for defendant.