**DROBA, M. D., Plaintiff, v. BERRY, M. D., Defendant.**

Common Pleas Court, Trumbull County.

No. 64795.   Decided December 22, 1955.

Theodore T. Ivanchak, for plaintiff.
James Mulcahy, for defendant.

## OPINION

By BIRRELL, J.

The petition for a declaratory judgment requests this Court to determine the validity of a contract of partnership entered into between Plaintiff and Defendant with respect to the following sentence in Section A of the Amended Article XI of said partnership agreement, to-wit:

"Further, Dr. Droba agrees that in lieu of not having made any original capital investment at the initial date of the agreement, he will not practice medicine or surgery for a period of ten (10) years, whether by himself or as a member of a partnership, in said Kinsman, Trumbull County, State of Ohio, or within a radius of thirty (30) miles from said point."

The Plaintiff, Dr. Droba, on May 24th, 1953 had entered into a partnership agreement with the Defendant, Dr. Berry, for a term of three years. Dr. Berry had established himself in Kinsman, having purchased a large dwelling in which his office was situated. He had already been drafted by the United States Army, and the date of his entrance into

service had been postponed in order to permit him to find some one to carry on his established medical practice in Kinsman. Dr. Droba was completing his internship in a hospital in Erie, Pennsylvania, and was ready to launch into the practice of medicine. Their contract of partnership provided that in the event one of the partners was called into the Armed Forces, the remaining partner should pay the rent of the office space in Defendant's building, at the rate of three hundred dollars a month, pay all expenses of continuing the partnership, and receive ninety per cent of the profits. Either partner was granted the right, upon ninety days notice, to dissolve the partnership, and if the partnership should be dissolved by either partner Dr. Droba agreed, among other matters, to remove himself from Kinsman as above set forth. When it was learned that Dr. Berry was leaving for the Service, Article XI of the partnership agreement was amended to which Amendment allusion will be made later.

The general rule in matters of this kind is substantially as follows:

"A contract in restraint of trade in which the restraint is partial only, reasonable and not oppressive, and in which a valuable consideration has passed between the parties, is one which the law will enforce." **11 O. Jur. (2d), §114, p. 353.**

"A physician may validly agree to limit or restrict himself in the practice of his profession within certain reasonable limitations of time and territorial area where ancillary to the formation of a partnership." 41 Amer. Jur. No. 5 p. 136.

The Ohio Courts have repeatedly affirmed the foregoing and applied the same not only to general employment but to contracts of physicians. The rule laid down is as follows:

"All contracts in general restraint of trade are opposed to public policy and void; and those in partial restraint are also illegal, except when founded upon a valuable consideration, and when good reasons appear for entering into the contract. Before such a contract can be enforced, it must appear from the pleadings and proofs; 1. That the restraint is partial; 2. Founded upon a valuable consideration; and 3. That the contract is reasonable and not oppressive. **Lange v. Werk, 2 Oh St 520.**"

This ruling has ben referred to, emphasized, and approved in the following cases:

**Thomas v. Admr. of Miles, 3 Oh St 274,** "Reasonable and proper."

**Grasselli v. Louden, 11 Oh St 349 @ p. 357** Quoting: "We cannot see how a better test can be applied to the question, whether reasonable or not, than by considering whether the restraint is such only as to afford a fair protection to the interests of the party in favor of whom it is given, and not so large as to interfere with the interests of the public. Whatever restraint is larger than the necessary protection of the party, can be of no benefit to either; it can only be oppression, and if oppression, it is in the eye of the law unreasonable. Whatever is injurious to the interest of the public is void on the ground of public policy.

**Lufkin Rule Co. v. Fringeli, 57 Oh St 596,** "Shown to have been reasonably necessary."

**Robey v. Theatre Co., 126 Oh St 473,** "Reasonable and not oppressive."

**Briggs v. Butler, 140 Oh St 499,** "not unreasonably restrictive upon the right of the employee and does not contravene public policy."

**Ewing v. Davis, 2 C. C. ns 90, affd. 71 Oh St 471,** "not unreasonable. nor oppressive, nor against public policy."

**The Paragon Oil Co. v. Hall, 7 O. C. C. 240,** "Such only as affords a fair protection * * * and not so large as to unnecessarily interfere with the interests of the public."

**Kevil v. Standard Oil Company, 8 O. N. P. 311,** "not more extensive than is necessary to enable the party * * * to enjoy the fruits of his contract."

**Harry Livingston Inc. v. Stern, 69 Oh Ap 105 @ p. 108,** "It is observed that the radius agreed upon covers its business activity."

**Gates-McDonald Co. v. McQuilkin, 33 Abs 481,** "The test generally applied in determining the validity of a restrictive comment is whether or not the restraint is necessary for the protection of the business or good will of the employers and if so, whether it imposes on the employee any greater restraint than reasonably necessary to secure to the business of the employer or the good will thereof such protection."

**Dance Studios v. Witter, 62 Abs 17** (a veritable mine of references), "The Courts must consider whether said restraint is reasonable as to (1) the employer, (2) the employe, and (3) the public."

**Hubman Supply Co. v. Irvin, 67 Abs 119,** "Irreparable injury, actual or threatening, must be proved in order to grant injunctive relief."

That the foregoing is the general rule is clearly adduced from the following quotations:

Williston on Contracts, No. 1636 Vo. 5 p. 4580.

"It is everywhere agreed that in order to be valid a promise imposing a restraint in trade or occupation must be reasonable. The question of reasonableness is for the Court, not the Jury; and in considering what is reasonable, regard must be paid to (a) the question whether the promise is wider than is necessary for the protection of the covenantee in some legitimate interest, (b) the effect of the promise upon the covenantor and (c) the effect upon the public. If the restraint imposed is greater than is necessary for the protection of the covenantee the promise is necessarily invalid."

And Pomeroy's Equity Jurisprudence, Vol. 3, No. 934 (c) pp. 687-9:

"As to what constitutes a reasonable restraint it is ordinarily held that each case must be governed by its own peculiar circumstances. Courts no longer fix arbitrary rules as to geographical bounds and time limits beyond which a contract to forbear from competition will not be enforced. * * * Public welfare is first considered, and if it is not involved, and the restraint upon one party is not greater than protection to the other party requires, the contract may be sustained. The question is, whether in the particular circumstances the contract is or is not reasonable."

It should be noticed that every decided case has placed emphasis upon the "reasonableness" of the restraint and generally the statement is made that the question of reasonableness must be determined upon the peculiar facts of each case.

Limitations as to space have been upheld to the following extent:

One city lot, Grasselli v. Lowden, 11 Oh St 349.

One square, Stephens v. Pahl, 23 O. N. P. NS. 377.

Four squares, Peterson v. Schmidt, 13 O. C. C. 205, 7 O. C. D. 202.

A whole city, Thomas v. Miles, 3 Oh St 274; Morgan v. Perhamus, 36 Oh St 517; Empson v. Bissinger, 8 O. D. Rep. 629; Barnett v. Glober, 8 Abs 75.

A whole county, Lange v. Werk, supra; Ewing v. Davis, 2 O. C. C. N. S 90; Affirmed 71 Oh St 471.

But limitation to a State has been held invalid: Lufkin v. Fringeli, 57 Oh St 596; Paragon Oil Co. v. Hall, 7 O. C. C. 240; Hubman Supply Co. v. Irvin, 67 Abs 119.

Cases generally limiting restrictions as to space are quoted in the following annotations:

98 A. L. R. 963; 52 A. L. R. 1362; 67 A. L. R. 1002; 29 A. L. R. 1331; 58 A. L. R. at p. 157; 20 A. L. R. 841 p. 867; 9 A. L. R. 1456 @ p. 1473.

By reference to the cases cited at 58 A. L. R. it will be noticed that the limitation discussed in the greater portion of them is either within a certain locality or within less than five miles of such center. The limitation as to distance is perhaps lessened by the age of the decisions. Possibly the advent of the automobile has extended the reasonableness of the distances.

The question raised directly in our case is whether the restriction to a distance of thirty miles is unreasonable.

Kinsman is a township five miles square, located in the north-east corner of Trumbull County. A doctor residing in Kinsman would naturally draw his practice from the township and from the surrounding territory closer to Kinsman than to other localities wherein other doctors reside. The nearest doctor to Kinsman on the north is in the Village of Andover, twelve miles north of the Defendant's residence in Kinsman; to the northeast the nearest doctor is located in Jamestown, eight miles away; to the east the city of Greenville, a busy industrial city which supports numerous doctors and a fine hospital, is only ten miles away, although by improved road the distance is quoted as fourteen miles; to the south-west the village of Cortland is twelve miles away. From these villages and cities doctors may be called to compete for business in the mutual territory between their individual residences and that of the Defendant in Kinsman.

At a slightly greater range of distance to the southwest (21) miles is located the city of Warren, which supports many doctors, three large hospitals, and is surrounded by thickly populated suburban area wherein doctors who practice both inside and outside of the city live. The City of Niles, with several doctors, is twenty-two miles from Kinsman; the City of Girard with other doctors is located approximately twenty-five miles from Kinsman; the Village of Hubbard with several doctors, is located twenty miles south of Kinsman, and the City of Youngstown (population approximately 200,000) with many doctors, physicians, surgeons and specialists, together with numerous hospitals is located twenty-seven miles from Kinsman. The territory surrounding these industrial centers and known as the Mahoning Valley, is a thickly populated and an extremely busy territory, all of which, is located between twenty and thirty miles from Kinsman. To the south and east eighteen miles from

Kinsman is the City of Sharon with its suburban cities of Sharpesville and Farrell in the Shenango Valley supporting other doctors and hospitals all within twenty miles of Kinsman. Considering the comparatively immense number of doctors practicing in the territory slightly more than ten miles from the Village of Kinsman, and the tremendous need of doctors, physicians and surgeons by the people living in this highly industralized Mahoning and Shenango River Valley, it would seem that the Defendant neither reasonably nor seriously could claim that these doctors are competing with him for Kinsman Township, nor would these doctors claim that the Defendant living in Kinsman was competing with them for any portion of the industralized territory located within thirty miles of Kinsman. To describe the situation and state the case on which the Defendant must depend for the validity of the thirty mile restriction is sufficient to show its unreasonableness.

It is possible, of course, that practitioners in certain specialized fields of medicine may or might claim that competition would be harmful within thirty or even one hundred miles of each other, where such fields are limited to a few very skilled specialists. It is possible, as shown by the cases above referred to, that in the mercantile world competition may be multiplied and extended by those who have acquired special knowledge of technical methods over a broad territory extending beyond the limits of large cities or counties or even possibly of states. It might be possible in certain skilled instances that thirty miles is not an unreasonable limitation wherein a physician should be restrained from commencing his practice. In this case neither the Plaintiff nor the Defendant claims to be a specialist. Plaintiff was completing his internship in the summer of 1953 when this partnership was formed. His experience in the practice of medicine was limited to two years at the date of dissolution of the partnership. Such experience was in general country practice. It seems impossible that this younger man, after two years only of practice in the locality of the older man, could by any range of imagination compete with the older man at any place within the thirty mile area outside of the immediate territory surrounding the township of Kinsman.

Under all the peculiar circumstances of this case the Court is inclined to the belief that the provisions of the contract restricting the practice of the Plaintiff to points beyond "the radius of thirty miles" from Kinsman is wholly unreasonable, and consequently invalid. This limitation is not divisible. When the terms of the contract itself are not divisible the Court is not permitted to make a new contract for the parties, and under such circumstances the provisions of the contract, in respect to the 30-mile limitation is void.

Gates-McDonald Co. v. McQuilkin, 20 O. O. 88; 33 Abs 481; Lange v. Werk, Supra; Grasselli v. Lowden, supra.

As a declaratory judgment the Court finds that the thirty mile restriction in Article XI of the contract of partnership is unreasonable under the circumstances of this case, and that Plaintiff has no obligation to the Defendant in that respect. A Declaratory Decree may be drawn. The costs may be assessed equally against both Plaintiff and Defendant, this type of action being for the advisory benefit of both parties.