FISHERS GRAIN COMPANY, INC., ET AL. *v.* SPARKS.

[No. 28,050. Filed January 30, 1945.]

*Garrison & Castor,* of Noblesville, and *Hammond, Buschmann, Roll & Alexander,* of Indianapolis, for appellants.

*Thomas L. Webber* and *Fae W. Patrick,* both of Indianapolis, and *Cloe, Campbell & Cloe,* of Noblesville, for appellee.

RICHMAN, J.—This is an appeal from a decree granting specific performance and an injunction. The questions arise on assigned error in overruling appellants' motion for a new trial which in substance specifies that the decision is not sustained by sufficient evidence and is contrary to law. Appellants offered no evidence but rely on the alleged insufficiency of that introduced by appellee. We summarize the material facts as follows:

A written contract was executed July 24, 1940, for the sale to appellee of the grain elevator business in the town of Fishers, Indiana, owned and theretofore operated by Fishers Grain Co., Inc. It was signed by P. W. McComas as president of the corporation and his wife, Marie McComas, as secretary. Mr. McComas also signed individually. The price allocated to the real estate was $15,000.00. There was a description by metes and bounds, concluding with the statement that it was "the intention to convey all of the real estate

in Lots one and two, which is now occupied by the Fishers Grain Co., Inc. . . . ," except a triangular plot with which we are not concerned. All of the tracts involved lie within the confines of said "Lots one and two." There were provisions for a survey and an abstract with "reasonable time" given for correction of defects in the title shown by the abstract. The concluding paragraph provides that "Wherever the term 'Party of the first part' is used in this contract, it shall include Paul McComas, provided he continues the business of party of the first part . . ."

On August 7, 1940, a supplemental written contract was similarly signed by the two officers of the corporation but without the individual signature of Mr. McComas. It recites "That the original contract entered into by said parties on the 24th day of July, 1940, is and shall be fully carried out, except as hereinafter stipulated . . ." It is stated therein that the corporation "has no title of record but has acquired a prescriptive right to" a tract, which we designate "A," and that the corporation shall "acquire a quit-claim deed" therefor "and when so obtained will convey said real estate by deed of quit claim, to party of the second part." There is also a recital that title to another tract, which we designate "B," is in the corporation "with a cloud thereon," which the "party of the first part" agrees to "clear." By inference from the word "deeds" italicized, *infra,* the "cloud" was to be removed by deed. The agreement also states in substance that a driveway, which has been used for many years, is a necessary outlet from the elevator office and scale house and that a right-of-way thereto shall be procured, "said right-of-way to run to the party of the first part." The contract concludes as follows: "It is agreed by the parties that party of the first part will procure the *deeds* and said

right-of-way hereinabove referred to within 18 months from the date hereof and convey the same to the party of the second part. The sum of $750.00, has been placed on deposit with the American National Bank of Noblesville, Indiana, as a guarantee that party of the first part will carry into effect the provisions of this supplemental contract and if the same is not performed by party of the first part, within the time specified said sum of $750.00, or so much thereon as may be necessary for that purpose, may be used by party of the second part for the correction of the title to said respective tracts of real estate above described and the procurement of said triangular right-of-way. . . ."

Within the 18 months period McComas obtained a conveyance to himself in *fee simple* of a strip of ground over which the said right-of-way would run in a diagonal direction. Near the end of the time allowed appellee insisted upon appellants' performance of the supplemental contract. McComas said "he was not going to perform it; he was just going to let it ride." He also "said he'd build a fence across the driveway." Appellee then brought this suit alleging non-performance with respect to tracts "A" and "B" and that McComas had fraudulently acquired title to the right-of-way in his own name, had refused to convey and was threatening to fence off the same, asking that a commissioner be appointed to make conveyance of the right-of-way and that the court authorize the appellee to receive the escrow sum and to use so much thereof as necessary to acquire tracts "A" and "B."

At the hearing quit claim deeds for tracts "A" and "B" were tendered by appellants but it is not contended that title thereto had been acquired or cleared or that the tender was compliance with the obligations of the supplemental contract. It appears by in-

ference from pleadings in the record that appellants had instituted suits to quiet title. Whether they are still pending is not shown. The escrow agent brought into court the escrow sum, represented by cashier's check payable to "Cash," and asked to be relieved of its duties. The court appointed a commissioner "to make and execute and deliver to the plaintiff a conveyance conveying" the right-of-way and permanently enjoined appellants "from interfering with the use and enjoyment" thereof by appellee. It was further ordered that the check be delivered to appellee to be used by him for the procurement of title to tracts "A" and "B" and "that after procuring title to said real estate plaintiff shall make due report and accounting to the Court of his expenditures and expenses herein."

The conduct and threat of McComas constitute sufficient factual basis for the injunctive relief. The remainder of the decree as to the right-of-way will be satisfied by grant of a perpetual easement. This much at least was required by the agreement to "procure the deeds and said right-of-way . . . and convey the same" to appellee. McComas as president and agent of the corporation was bound equally with the corporation by the covenant to convey. A corporate officer acquiring title under the circumstances disclosed must be held to be a trustee for the benefit of his principal. 19 C. J. S. *Corporations,* § 784; 3 Fletcher Cyc. Corporations, § 861.

Appellants contend that the reasonable value of "A" and "B" is much less than $750.00 and should appellee receive the check he may pay too much for the tracts. If, in the face of their express agreement, they have a right to be heard at all, that time will come when appellee files the report required by the

decree. By retention of jurisdiction the court has adequately provided against misuse of the fund.

*Zenor* v. *Pryor* (1914), 57 Ind. App. 222, 106 N. E. 746, cited by appellants, is not in point. The $750.00 was not a penalty. The parties called it a "guarantee." It is to be used only for the purposes specified. If it is more than "necessary," which is a question of fact, the trial court will so determine and make the appropriate order. If it is not enough, there will be another problem which we are not now required to solve.

Appellants think that performance should await the termination of suits to quiet title already begun by them. They did not so agree. When the original contract was made it was contemplated that defects in title might be shown by the abstract. Their nature and the remedy required being unknown, a "reasonable time" was provided for correction. When the supplemental contract was written the abstract had disclosed the status of the title and the time for correction, theretofore necessarily uncertain, was definitely fixed at "18 months." The method provided was not by suits to quiet title prosecuted to judgment but by the procurement of deeds. For this purpose "18 months" would seem to be ample time allowance. We therefore cannot accept appellants' view that time was not of the essense of the contract. All reasonable inferences from the language of the two contracts and the circumstances under which they were written compel the view that the time element was important. A court will not substitute a new contract of its making for one fairly and intelligently made by the parties. Particularly, it seems, should this be true where the delinquent party is not trying to perform but is repudiating his obligations.

Finding no error, the decree is affirmed.

Note.—Reported in 58 N. E. (2d) 932.