247 So.2d 764 (1971)
Vlaho BRUER et al., Appellants,
v.
The SANFORD ATLANTIC NATIONAL BANK, for the Use and Benefit of Elizabeth A. Paulucci, Appellee.
No. 70-868.
District Court of Appeal of Florida, Fourth District.
May 14, 1971.
Max F. Morris, of Helliwell, Melrose & DeWolf, Orlando, for appellants.
Robert Dyer, of van den Berg, Gay, Burke & Dyer, Orlando, for appellee.
OWEN, Judge.
This case involves the question of whether appellee Elizabeth Paulucci, as an indorser subrogated to the rights of a secured party under the provisions of F.S. section 679.504(5), F.S.A. (Section 9-504 (5) UCC), was estopped (by virtue of her prior conduct) to assert the secured party's right to take possession of the collateral after default. The trial court answered this in the negative by entering partial summary judgment in favor of the indorser in her suit to replevin the collateral.
On May 2, 1969 Ruben's, Inc. executed its promissory note for $4,500 payable to *765 certain of the appellants (hereinafter Bruer). A security agreement was executed creating in favor of Bruer a security interest in certain restaurant equipment and fixtures as collateral. Both the note and security agreement were signed by Elizabeth Paulucci (at the time Elizabeth D'Aversa) in her capacity as corporate secretary. Bruer did not file the financing statement with the Secretary of State until March 27, 1970, nearly eleven months later.
On May 26, 1969 Ruben's, Inc. executed a note and security agreement in favor of the Sanford Atlantic National Bank. The agreement granted the bank a security interest in the same collateral that had been made subject to the Bruer security interest. Miss Paulucci did not sign either the note or the security agreement as a corporate officer, but she did personally indorse the note on the reverse side thereof. The bank filed its financing statement with the Secretary of State on June 19, 1969.
In January, 1970 Ruben's, Inc. sold its restaurant business, together with the collateral involved in this suit. The purchasers assumed the obligation for the bank's note but Ruben's, Inc. remained liable on the Bruer note. However, by June 1970 the purchasers had defaulted on the bank's note. The bank then made demand on Miss Paulucci (as indorser) to pay the balance due on the note, $23,891.81. Upon receipt of payment, the bank executed a subrogation agreement by virtue of which it assigned to Miss Paulucci all of its right, title and interest in the note and security agreement, and further agreed that any action could be brought in the name of the bank. The collateral being at that time in appellants' possession, this replevin action was filed.
There is no issue in this case as to the priority of the conflicting security interest in the collateral. Even though the Bruer security interest attached first under F.S. section 679.204(1), F.S.A., the delay in filing the financing statement permitted the bank's subsequently attaching security interest to take priority under the "first to file" rule of F.S. section 679.312(5) (a), F.S.A. Appellants candidly acknowledge that if this case involved nothing more than a mere contest as to priority between the bank and themselves, they would have an untenable position. They contend, however, that by virtue of F.S. section 671.103, F.S.A., the principles of equitable estoppel and subrogation supplement the provisions of F.S. section 679.504(5), F.S.A. (Section 9-504(5) UCC), and that such being the case, the facts here would equitably estop Miss Paulucci from being subrogated to the bank's superior lien.
Our disposition of this case does not require a decision on whether F.S. section 679.504(5), F.S.A. (Section 9-504(5) UCC) displaces the law of estoppel and subrogation.[1] Assuming, without deciding, that the law of estoppel can be applied to one who seeks to be subrogated to the rights of the secured party under the provisions of F.S. section 679.504(5), F.S.A. we conclude that there is no factual basis in this case upon which to apply an estoppel against Miss Paulucci.
The Bruer security interest attached on May 2, 1969. The bank's security interest did not attach until May 26, 1969, and its financing statement was not filed until June 19, 1969. Bruer thus had 47 days within which a financing statement could have been filed with the Secretary of State which would have created a priority over the bank's security interest under the "first to file" rule of F.S. section 679.312(5) (a), *766 F.S.A. The secondary priority which Bruer's security interest now has in the collateral is due solely and simply to the delay in filing the financing statement. Thus, for appellants to avail themselves of the defense of estoppel, they must show that the delay in filing is due to a reliance upon some conduct, act or omission to act on the part of Miss Paulucci, Miami Gardens v. Conway, Fla. 1958, 102 So.2d 622, or upon Ruben's, Inc. (if it reasonably can be inferred that such corporation is her alter ego).
Nowhere in the facts of this case is there the slightest inference that there was any conduct on the part of either Miss Paulucci or of Ruben's, Inc. upon which appellants relied so as to cause the delay in filing the financing statement. Appellants point to the provision in the security agreement which prohibited Ruben's, Inc. from subjecting the collateral to a subsequent security interest of a third party without Bruer's advance consent in writing. However, F.S. section 679.311, F.S.A. specifically authorizes the debtor to create a subsequent security interest in the same collateral despite any security agreement provision to the contrary. Hence, a secured party cannot be heard to claim that a covenant of this type in the security agreement, standing alone, is a statement of the debtor which led the secured party to delay filing. Of paramount consideration, however, is the simple fact that even if such a covenant in the security agreement could be considered as a statement made by the debtor to the secured party, there is not the slightest suggestion or inference in this case that for nearly eleven months Bruer delayed filing his financing statement in reliance upon such covenant. In fact, when Ruben's, Inc. sold the business in January, 1970, Bruer was aware then that the bank's security interest had a priority in the collateral, yet even then waited another two months before filing the financing statement.
Appellants contend that Miss Paulucci's prior knowledge of the debt to Bruer and her own primary liability on the debt to the bank prohibits her from becoming entitled to subrogation to the bank's interest. Neither position has merit. Cases cited for the proposition that one who has prior knowledge of an intervening lien may not become subrogated to the prior lien are cases involving legal subrogation. In this case we have contractual or conventional subrogation. Miss Paulucci's liability on the note to the bank was not primary but secondary. F.S. section 673.102(1) (d), F.S.A.
Affirmed.
CROSS, C.J., concurs.
MELVIN, WOODROW M., Associate Judge, dissents with opinion.
MELVIN, WOODROW M., Associate Judge (dissenting):
I respectfully dissent from the conclusion reached in the able majority opinion. It is my view that the conduct of Elizabeth D'Aversa (Paulucci) amounts to at least a constructive fraud done in violation of the written covenant executed by her and her husband as secretary and president of Ruben's, Inc. (said to be their family corporation) and contained in Ruben's, Inc. security contract with Bruer of May 2, 1969. The covenant referred to is that Ruben's, Inc. would not further pledge or encumber the personal property described therein.
That the commitment was binding upon Ruben's, Inc., is beyond dispute. Is it likewise binding upon the corporate officers as individuals? Equity in my judgment cries out for such conclusion so that a right may be vindicated and a wrong denied its pound of flesh. The history of the dealings between the parties is set forth in the majority opinion. It is my view that the act of the plaintiff, Elizabeth D'Aversa (Paulucci) in personally endorsing the corporate note to Sanford Atlantic *767 National Bank did not so position her that she, as an individual, may claim the fruits of subrogation under the provisions of the Uniform Commercial Code and the terms of the Sanford Atlantic National Bank's security instrument. Such endorsement by her as an individual could only have been designed to aid Ruben's, Inc. in doing the very act that she and her husband, as secretary and president respectively of said corporation, by written covenant to Bruer pledged would not occur, namely, to further encumber the personal property described in Bruer's security instrument.
It is noted that Section 671.203, Florida Statutes 1969, F.S.A., provides that:
"Every contract or duty within this code imposes an obligation of good faith in its performance or enforcement."
The obligation of good faith comes to rest evenly upon the shoulders of the individuals who act and sign documents as the president and secretary and with no less weight, either legal or moral, than it rests upon the corporate entity.
In the case of Fishers Grain Co., et al. v. Sparks, 223 Ind. 133, 58 N.E.2d 932, the Supreme Court of Indiana held that a corporate officer who acquired title to real estate in himself after having joined in a contract whereby the corporation agreed to purchase and to convey such realty, would be held to be the Trustee and hold title for the benefit of the corporation. The court observed that the individual serving as president and agent of the corporation was bound as an individual equally with the corporation by the covenant to convey.
I would hold in this case that Elizabeth D'Aversa (Paulucci) is by her conduct estopped to assert any right as subrogee of the Sanford Atlantic National Bank. The provisions of the Uniform Commercial Code were not intended to wash the stains of broken promises from this plaintiff's hands. Equity forbids it.
It is my view that as between Ruben's, Inc. and its president and secretary in their representative or individual capacities, and Bruer, it is immaterial to the enforcement of Bruer's security instrument whether the same was ever filed in the office of the Secretary of State.
For the foregoing reasons I respectfully note my dissent.
NOTES
[1] There is some authority in support of the view that it does not. See National Shawmut Bank of Boston v. New Amsterdam Casualty Company, 1 Cir.1969, 411 F.2d 843; Hillman's Equipment, Inc. v. Central Realty, Inc., Ind. App. 1968, 242 N.E.2d 522; and French Lumber Co. v. Commercial Realty and Finance Co., 1964, 346 Mass. 716, 195 N.E.2d 507.