**CRESTWOOD PARK, INC., Appellant (Defendant below),**

v.

**Joseph APOSTAL, Appellee (Plaintiff below).**

No. 382 S 77.

Supreme Court of Indiana.

March 3, 1982.

Duane W. Hartman, Blachly, Tabor, Bozik & Hartman, Valparaiso, for appellant.

Lowell E. Enslen, Gary K. Matthews, McHie, Enslen & Moran, Hammond, for appellee.

HUNTER, Justice.

This cause is before us on the petition to transfer of Joseph Apostal, wherein he seeks review of the Court of Appeals decision found at *Crestwood Park v. Apostal*, (1980) Ind.App., 413 N.E.2d 654 (Miller, J., dissenting), aff'd on rehearing, Ind.App., 415 N.E.2d 757 (1981). We hereby grant transfer, vacate the decision and opinions of the Court of Appeals, and reinstate the judgment of the trial court.

Prior to 1959, Joseph Apostal was part owner of Crestwood Park, Inc., whose primary asset consisted of an undeveloped subdivision which had been platted and approved by its governing municipality, Hobart, Indiana. In 1959, by written agreement with Crestwood Park, Inc., Apostal terminated his relationship with the corporation. Pursuant to the contract, the subdivision was divided between the corporation and Apostal; the agreement also provided for the future development of the subdivision.

Contemplated in the contract was a cooperative and complementary effort by the parties to develop the divided subdivision. The contract reads in pertinent part:

"BOTH PARTIES AGREE:

"1. That they will cooperate fully with each other in the full, rapid, efficient and economical development of all lots in Crestwood Park Second Subdivision which are not now fully developed. It is understood that certain streets must be paved, curbs laid, storm and sanitary sewers installed and gas, electricity and water made available to each lot.

"2. If either party desires to have Oakwood Drive paved, then it shall be paved all at one time from Third Avenue to West Second Place under terms as hereinafter provided. If either party desires to pave Driftwood Drive or West Second Place and/or install curbs in said streets, each street shall be paved and/or curbed in its entirety at one time under terms as hereinafter provided. If either party desires storm sewers or sanitary sewers constructed in any block or upon any street, then said sewer shall be constructed for one whole block or one whole street, as the case may be, at one time.

"3. If either party hereto desires curbs, streets, storm or sanitary sewers to be installed in or on any block or street, each party shall have the opportunity to bid the prices at which he or it would be willing to perform the work, and either party may invite other contractors to bid. The lowest responsible bidder shall obtain the job if both parties agree. If both parties cannot agree on this method, then either party will be free to attempt to obtain any desired improvements under the provisions of the Barrett Law.

"4. If improvements are made but are not made under the Barrett Law, the total cost of installing curbs and streets shall be distributed between the parties on a front footage basis, and for the purpose of this clause, front footage may include the side of a corner lot along which a curb or street is laid."

Despite these terms, Apostal's attempts to improve the lots owned by him were repeatedly thwarted by Crestwood Park, Inc. The history of Apostal's frustration was fully detailed by the Court of Appeals:

"After entering this agreement, Apostal advised Crestwood numerous times by telephone that he wanted to begin improvements for his lots. Crestwood's response to Apostal was either 'no' or that the officers of Crestwood would talk about it. On January 10, 1963, Apostal wrote Crestwood advising that he desired to put in sanitary sewers and that if he (Apostal) did not get a response from Crestwood he would seek 'Barrett Bond' financing. When Crestwood did nothing toward making the necessary improvements, Apostal entered into a recapture agreement with the City of Hobart whereby Apostal installed the sanitary sewer improvements and would be reimbursed for that expense out of the tie-on fee charged each lot owner by the City. This recapture agreement was made in 1964. After the 1964 recapture agreement with the City of Hobart and continuing to 1972, Apostal would contact Crestwood several times each year and advise it that he wanted to further improve his lots by putting in paved streets, curbs, gutters, etc. Again, Crestwood failed to take any action. Apostal sought Barrett Bond financing through the City of Hobart in order to make further improvements on his lots on Oakwood Drive. Financing was to be obtained through the general improvement fund (rather than by Barrett Bonds) of the City of Hobart. Public hearings were held on the project and bids were submitted. Among the three bids submitted was one made by Arthur Lisak, the president of Crestwood. Lisak eventually was the successful bidder. However, Lisak then remonstrated against the improvements project and stated that the City of Hobart would be sued if the contracts were let. The City of Hobart then tabled the Oakwood Drive improvements project." *Crestwood Park, Inc. v. Apostal, supra,* 413 N.E.2d at 655–6.

Based on Crestwood's actions, Apostal filed suit in 1977 to recover damages allegedly incurred by virtue of his inability to improve his seven lots on Oakwood Drive. The cause was tried without the intervention of a jury. Judgment was entered in favor of Apostal and he was awarded damages totaling $7,592.34.

Crestwood appealed. The Court of Appeals affirmed the determination that the corporation was liable to Apostal, but reversed in part the award of damages. *Crestwood Park, Inc. v. Apostal, supra.*

The Court of Appeals correctly rejected Crestwood's contention that Apostal had not discharged his contractual responsibilities to Crestwood. Specifically, Crestwood maintained Apostal had violated a condition precedent to the parties' financing agreement when, in 1964, he entered the contract for installation of sewers without submitting bids or plans to Crestwood. As the Court of Appeals acknowledged, however, paragraph 3 of the contract required only that each party have "the opportunity to bid."

Crestwood did not argue that it was without the *opportunity* to bid in 1964; rather, it suggested that the contractual terms required Apostal to submit bids and plans to Crestwood. That supposition, as the Court of Appeals concluded, requires an interpretation of the contractual phrase "the opportunity to bid" which takes it beyond its plain meaning. The phrase is unambiguous, and it is consequently our duty to effectuate its stated intent. *Fishers Grain Co. v. Sparks,* (1945) 223 Ind. 133, 58 N.E.2d 932; *Fort Wayne Bank Bldg., Inc. v. Bank Bldg. & Eq. Corp.,* (1974) 160 Ind.App. 26, 309 N.E.2d 464. Pursuant to paragraph 3, Apostal had no duty to submit bids or

plans to Crestwood, whose argument to the contrary is misplaced.

Likewise, the Court of Appeals correctly held that even if Apostal somehow breached the contract by virtue of the 1964 "recapture" agreement with the City of Hobart, that fact does not warrant reversal of the trial court's judgment. As measured against the essence of the Crestwood-Apostal contract, Apostal's agreement with the City of Hobart to facilitate the installation of sewage facilities was of *de minimus* impact. In addition, as the Court of Appeals observed, Crestwood had sold some of the lots which, solely through Apostal's initiative, had been connected to the sewage facilities. Crestwood cannot also gain relief on the basis that Apostal's conduct constituted a breach, when that conduct was necessitated by Crestwood's failure to act and has not resulted in any demonstrated harm. Indeed, Crestwood has not argued it was harmed by the installation of sewers accomplished by the recapture agreement.

The Court of Appeals also correctly concluded that Apostal's determination to finance improvements through general improvement bonds, rather than a Barrett Bond as contemplated in the contract, did not warrant relief. Again, Crestwood has not argued the use of alternative financing was a material alteration of the agreement with Apostal, nor has it argued it was harmed in any manner by Apostal's resort to alternative financing.

The majority of the Court of Appeals reversed the trial court's determination that Apostal was entitled to $7,000 in damages for lost profits on the sale of the seven lots; the reversal was predicated on the basis that Apostal had failed to produce evidence to establish his lost profits, and that to permit the damages award to stand would place Apostal in a better position than he would have been in had the contract not been breached. *Crestwood Park, Inc. v. Apostal*, (1981) Ind.App., 415 N.E.2d 757 (Opinion on Pet. for Rehearing). Judge Miller dissented on the basis "the possible value of the property some four years after

Crestwood Park's breach is evidence too conjectural in nature to be considered in measuring damages in this case." *Crestwood Park v. Apostal, supra*, 413 N.E.2d at 660.

We embrace this latter view, although we recognize the question as an extremely close one which involves a collision of contract principles.

The record reveals at the time of Crestwood's breach, each of Apostal's seven lots had a market value of $3,600. After deducting the purchase price for each lot ($1,000), as well as the expenses incurred in improving each tract (approximately $800), Apostal calculated his lost profits to be $1,800 per lot.

The record also reveals that further development of the Oakwood Drive lots—the paving of streets—was indefinitely tabled by the City of Hobart subsequent to Crestwood's remonstrance against the improvement project. Further construction and development of the lots were halted; meanwhile, Apostal continued to pay property taxes on the lots; at the time of trial, those payments made since Crestwood's breach amounted to $460.

It can arguably be said that inasmuch as Apostal still owns the lots, recovery of the $7,000 awarded him by the trial court possibly might put him in a better position than he would have been in had the breach not occurred. That is not the aim of contract law. *Jay Clutter Custom Digging v. English*, (1979) Ind.App., 393 N.E.2d 230; *Irving, et al. v. Ort, et al.*, (1957) 128 Ind.App. 225, 146 N.E.2d 107.

Similarly, it might be argued—as the majority of the Court of Appeals held—that Apostal should have presented evidence to show any increase in the cost of improving the lots which had occurred between the time of Crestwood's breach and the trial; absent such evidence, it might be said that any award of damages to Apostal is a product of speculation, which is also generally forbidden under the law of contracts. *Prudential Insurance Co. of America v. Executive Estates, Inc.*, (1977) Ind.App., 369 N.E.2d 1117; *Indiana State Highway*

*Comm. v. Pappas*, (1976) 169 Ind.App. 611, 349 N.E.2d 808.

Here, however, Apostal's ultimate loss was not capable of ascertainment at the time of trial, for, as the evidence revealed, the moratorium on improving the lots which had been occasioned by Crestwood's breach was indefinite and continued post-trial. Any evidence Apostal could have offered regarding when the City of Hobart might have permitted completion of the improvements would have been the product of conjecture; consequently, any testimony regarding the increased costs of completing the project and the concomitant reduction in Apostal's profits would have also been unadulterated speculation.

It has been recognized that any measure of damages must be flexible enough to accommodate the peculiar necessities of the situation. *Jerry Alderman Ford Sales, Inc. v. Bailey*, (1972) 154 Ind.App. 632, 291 N.E.2d 92, 294 N.E.2d 617. Here, the unusual circumstance of the indefinite moratorium inspired at its inception by Crestwood rendered wholly uncertain the question whether the project would ever be completed; likewise, any potential completion date and concomitant determination of increased costs of improvements were incapable of determination with any degree of certainty. Meanwhile, Apostal confronted the continuing specter of yearly property taxes on the lots which Crestwood's breach had placed in limbo.

In the face of these circumstances, it is necessary that the damages be measured at the time of the breach, without reference to subsequent fluctuations in value which might be opined through conjecture. *Compare, Decatur County Ag-Services, Inc. v. Young*, (1981) Ind., 426 N.E.2d 644; *Jerry Alderman Ford Sales, Inc. v. Bailey, supra; Foster v. Klinger*, (1931) 92 Ind.App. 700, 175 N.E. 136; *Goodwine v. Kelley*, (1904) 33 Ind.App. 57, 70 N.E. 832. The trial court was presented with ample evidence to support the conclusion that at the time of the breach, Apostal suffered a lost profit of $1,800 on each of his seven lots. Consequently the court's decision to award Apostal $7,000 in damages was justified, and the award of damages is reinstated.

Finally, Crestwood has contended the trial court had no jurisdiction to enjoin its officers from dissolving the corporation and to order them to reconvey into corporate assets monies which had been transferred into a trust. The court's order was made conditional upon satisfaction of the judgment.

The officers of the corporation, whether they were named in the order, would have been bound by it, for it is axiomatic that a corporation can act only through its officers. Like the Court of Appeals, we note the parties have not devoted any significant argument to this issue on appeal; it is appropriate that a resolution of any related questions which may arise in the satisfaction of the judgment be addressed in the context of those proceedings.

For all the foregoing reasons, there was no trial court error. The decision of the Court of Appeals is vacated and the judgment of the trial court is in all things affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.